15286

PALMER v. SOVEREIGN CAMP, W. O. W.

(15 S. E. (2d), 655)

March 12, 1940.

*Mr. Horace L. Bomar, Jr.,* of Spartanburg, and *Mr. G. W. Speer,* of Gaffney, for appellant,

*Messrs. Hall & Saint-Amand,* of Gaffney, and *Mr. Steve C. Griffith,* of Newberry, for respondent, 

July 1, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The action was brought by the plaintiff, as beneficiary named in a certain certificate of life insurance issued to her husband, John H. Palmer, on April 30, 1936. He had been a member of his local camp, No. 74, of the Woodmen of the World, since 1928, but his original certificate was exchanged upon his written application for the certificate upon which this action was brought. In applying for the exchange he agreed that his original application for membership, and the constitution, laws and by-laws of the society then in force and thereafter adopted, should enter into and form a part of his new certificate.

Appellant is a fraternal beneficiary association, having a lodge system, with a representative form of government, with a ritualistic form of work, and is incorporated under the laws of the State of Nebraska, with its home office in Omaha.

Palmer died on August 17, 1939. The defendant upon demand refused to pay the policy, upon the ground, which was later pleaded in detail in its answer, that the policy had been forfeited by the failure of insured to pay certain of his monthly dues strictly in accordance with the provisions of

the constitution and by-laws. Under the certificate held by the insured, he was required to pay to the financial secretary of his local camp, who was the agent of the defendant, the sum of $1.24 each month not later than the last day of the month. And under the constitution and by-laws of the defendant it was provided that failure to pay each month's dues during the month for which due would result in the automatic suspension of the delinquent member, and a forfeiture of all rights in the insured's certificate. The by-laws further provide that whenever delinquent installments were paid by a suspended member, such payments were a warranty that he was then in good health, and that he would remain in good health for thirty days after such attempt to again become a member; that if the warranty were untrue the certificate would be null and void. It is likewise provided that one making delinquent payments agrees that the society may retain said delinquent payments without waiving any of the provisions of the constitution and by-laws, until the secretary of the society has received actual—not constructive or imputed—knowledge that the person making such payments was not in fact in good health when he attempted to again become a member.

The plaintiff obtained judgment in the lower Court, and the defendant appeals.

The first question which we will consider has to do with whether the Circuit Court erred in overruling the defendant's motion for a directed verdict. The lower Court concluded that there was sufficient evidence in the record to submit the case to the jury on the issue of waiver, that is, whether by allowing the insured and other members of the local camp to pay their dues the month following the month for which they were due, a custom might have been established and a course of dealing followed which would be some evidence of waiver.

As we understand the record and the arguments presented, it is the theory of the appellant that the failure of the deceased to pay his dues for the months of April, May, Aug-

ust, September, November and December of 1938, and for the months of March and May of 1939, on or before the last day of each respective month when due, rendered the certificate void. It is undisputed that during said months Palmer was not in good health, but was continuously suffering from diabetes from March, 1938, until August, 1939, from which disease he died.

The evidence tends to show that the insured failed to pay his monthly assessments within time during seven or eight of the seventeen months next preceding his death. In each instance, according to the appellant's contention, the assessments during this period were paid in the month following the month they were due, and were, therefore, delinquent. For example, according to the books kept by the financial secretary of the local camp, the April, 1938, installment was paid on May 14, 1938; the August installment on September 12th; the November installment on December 10th; the December installment on January 14, 1939; the March installment on April 29, 1939, and the May, 1939, installment on June 30, 1939. No contention is made that the assessments for June and July, 1939, were not paid in accordance with the by-laws. Palmer died the following month.

There was not only testimony from several members of the local camp, but also from the financial secretary, that it had been the custom for years for members to pay their insurance assessments from one to ten days late, and that the secretary would enter such payments upon his book as being made within time, on the last day of the month in which they fell due, and back date his receipts. The monthly report and remittance of the financial secretary were mailed to the defendant on or about the tenth day of each month. However, we are dealing here not so much with the prevailing custom of permitting delinquent members to pay their assessments subsequent to the month in which they fell due, and prior to the time the regular monthly report of the financial secretary was mailed to the sovereign camp, but pri-

marily with an alleged custom of permitting ill members or members not in good health to pay their delinquent dues.

It appeared that the local camp would pay monthly installments for sick members after they were delinquent, as a matter of custom. In fact, the local camp, upon learning that Mr. Palmer, the insured, had been in the hospital and was financially stressed, paid to the financial secretary his delinquent dues for the months of April and May, 1938. The financial secretary of the local camp, Mr. Vernon Price, had served the camp in this capacity for 27 months. There was testimony, although disputed, that he was told more than once by Ray Curtis, son-in-law of the insured, that Mr. Palmer was suffering from diabetes. Curtis testified that on October 12, 1938, he went to the home of Mr. Price and paid the September installment of the insured, and again on December 11, 1938, and paid the November installment of the insured; and that upon each of these occasions Mr. Price, the financial secretary, asked him how the insured was getting along and that he told Price that diabetes was about to get the best of him, and that he was being given insulin. He further testified that when he stated to the financial secretary that he wished to pay the November installment on December 11th, the secretary said it would be all right.

C. K. Price, who had been a member of this camp for years, and who was formerly an officer, testified that it was the custom of the camp to pay the delinquent dues of sick members, and the record shows that the camp directed the payment of the April assessment of Mr. Palmer on May 14th, knowing that he was sick, which was four days after the regular monthly report of the financial secretary had been mailed to the sovereign camp. Mr. C. K. Price likewise stated that it was the practice and custom of the sovereign camp to notify members of their suspension when the report of the secretary showed that the assessment had been paid beyond the last day of the month in which it fell due. But there is nothing in the evidence to show that Palmer was

ever notified by the local financial secretary of the sovereign camp that he had been suspended because of the delinquent payment of any monthly installment. The record reflects that from April, 1938, through May, 1939, seven monthly payments were made by or for Palmer in the month following the month in which such payments fell due, and beyond the time when the monthly report of the financial secretary was usually forwarded to the defendant. None of these payments were, however, more than thirty days late.

Mr. Vernon Price, the financial secretary, testified that these delinquent payments were sent to the defendant in a supplemental report, but there is nothing in the evidence to indicate that Palmer was marked thereon as being delinquent, or as to when these reports were mailed. None of the reports were offered in evidence by the defendant. Price further said that it was his custom to collect assessments from the members at any time, provided they were in good health, and he testified that Palmer appeared to him to be in good health. The secretary admitted that he regularly attended the meetings of his camp, and was present at the meeting on May 14, 1938, when the camp directed that the April assessment of Palmer be paid from camp funds, and that he heard it announced at such meeting that Palmer had been ill and in the hospital. He would neither deny nor affirm that Curtis, the son-in-law of Palmer, who made the late payment of the assessments for September and November, had told him that Palmer was then suffering from diabetes. All of the payments to which we have adverted were accepted by the secretary, and retained by the sovereign camp until after Palmer's death, when the defendant, learning from the proofs of death that he had died of diabetes, and that his illness preceding his death had been continuous for nearly two years, refused to pay the claim and tendered a refund of all premiums which it had received from May, 1938, until August, 1939.

Further adverting to the testimony, there is nothing to show that Palmer was not at all times regarded as being in good standing by his local camp, or that he had ever been denied attendance upon its meetings or otherwise barred from enjoying its privileges. During his long illness, which covered the period when these delinquent dues were paid, his standing in the order, so far as the record shows, was not questioned by the local camp or by the defendant association. And it is evident from the practice pursued and the course of dealing followed between him and the financial secretary, and between the financial secretary and the association in making his monthly payments, that he relied upon such course of dealing, in that any such delinquency would not bring about a suspension or forfeiture of his certificate. There was ample evidence to go to the jury tending to show that the local financial secretary accepted the delinquent payments with full knowledge of Palmer's serious illness. Whether he reported to the defendant the condition of Palmer's health does not appear.

The question then is: Did the continued indulgence or sanctioned practice of allowing Palmer to make delinquent monthly payments while ill, after the regular monthly report had been mailed, and with full knowledge on the part of the financial secretary of his illness, create a new, or at least a modified contract between Palmer and the association, or a waiver or estoppel sufficient to preclude the defendant from a denial of liability on the death claim presented by the plaintiff.

If the doctrine contended for by the appellant is to be upheld, then the insured, who had been a member of the organization for nearly twelve years, and who had paid his monthly assessments, although some were delinquent in the belief that he held a valid and enforceable certificate, had as a matter of law been under a cloud of suspension for more than a year without suspecting it, and without knowing that all the while his certificate was worthless. He stood, according to the contract and the by-laws, suspended, and his cer-

tificate forfeited, unless for thirty days following each delinquent payment he remained in good health.

The appellant contends that the insured was bound by the by-laws and the constitution, the provisions of which we have referred to, and that upon the failure of the deceased to pay his installments not later than the last day of the month in which they fell due, he was by the automatic operation of the laws of the society at once suspended from membership therein, and that the acceptance and retention of delinquent payments were conditioned upon the warranty that the insured was then in good health, and would so remain for a period of thirty days. That upon failure to pay within due time, his certificate became forfeited, and that this result is in no manner avoided by any practice, custom or habit which might have prevailed between him and the local camp, or its financial secretary, the agent of the defendant, as to the time when or the manner in which the installments had been collected. We are not prepared to go to this length under the facts of this case.

The secretary of the local camp must be held to be the agent of the sovereign camp. Under Section 105 of the constitution and laws of the order, he is appointed to office, and may be removed at will by the president and secretary of the defendant. He is, therefore, a creature of the association. He has charge of all the accounts of the members, and attends to the correspondence concerning their standing, and receives and receipts for the sovereign camp fund assessments and monthly installments thereof; he is charged with the duty of making all reports, and mails or delivers all notices required. He further remits all funds due and owing to the sovereign camp to the secretary of the association at his headquarters, and a bond is required of him by the association for the faithful performance of such duties.

The laws of the association with studied effort attempt to circumscribe the local secretary's authority, and limit his power as such agent, but such restrictions and limitations

cannot be held to override the general law of this State governing the relation of principal and agent. Fundamentally it may be stated that acting within the actual scope of his authority, the principal is bound by the acts of his agent; that notice to the agent under such circumstances is imputed to the principal. *Wimberly v. Sovereign Camp, W. O. W.,* 190 S. C., 158, 2 S. E. (2d), 532.

Further it may be stated that when an association, such as the appellant, has delegated to a subordinate officer some duty to be performed for the association, the latter is bound by the acts of its agent within the scope of the delegated duties and while performing same; that notwithstanding Section 8047 of the Code of 1932, which provides that no officer of a subordinate body shall have authority to waive any of the provisions of the laws and the constitution of fraternal benefit societies, the supreme lodge itself, or its officers acting within the scope of their official duties, have power to bind in that regard, and the general rules applicable to waiver and estoppel apply to their acts the same as to the acts of other corporations or individuals and their duly authorized agents. *Crumley v. Sovereign Camp, W. O. W.,* 102 S. C., 386, 86 S. E., 954; *Dillingham v. National Council, Junior Order of United American Mechanics,* 113 S. C., 430, 102 S. E., 721; *Wimberly v. Sovereign Camp, W. O. W., supra.*

We held in the *Wimberly case* (190 S. C., 158, 2 S. E. (2d), 537), that "it is an elementary principle of law that the knowledge of an agent with reference to matters occurring within the scope of such agent's duty is imputable to the principal, and the principal is bound by the knowledge of such agent."

When Palmer paid, or had paid for him, his delinquent assessments to the financial secretary, such secretary was required according to the laws of the order to report to the association all sums collected by him, all the information touching the standing of the members of the local camp, and the matter of their suspensions. It is inferable, as al-

ready stated, that the local secretary well knew that Palmer was an ill man. The fact of the serious illness of a member should, therefore, as a part of his duties, have been reported to his superior officers. Whether he reported the illness of the insured to the defendant we do not know, but he accepted his money, forwarded it regularly to the association, and the latter retained it without question; and it was not until Palmer's death, seventeen months after the delinquent payment of the April, 1938, assessment, that the defendant saw fit to order an investigation, as the result of which it refused payment.

Since the local financial secretary must be regarded as the agent of the sovereign camp in the matter of collecting assessments and reporting the standing of the members to the sovereign clerk, the knowledge of the agent, acquired in the discharge of his duties, was the knowledge of the appellant. In this case, the omission of the local secretary to advise his principal (if he did omit) that for six or seven months he accepted delinquent monthly payments from the insured with full knowledge of his illness, constituted a waiver or estoppel properly chargeable to the defendant.

It may be stated further that the local secretary had no part in the waiver except to act as a channel of information, but this circumstance cannot alter the ultimate liability of the defendant. The law will presume that the local financial secretary performed, or should have performed, the duty resting upon him, and that he transmitted to the appellant all pertinent information received in the line of his duty; and if the agent fails so to do, the knowledge of that which he is in possession of is imputed to the sovereign camp the same as if it had received the payments under the circumstances stated.

The fact that Palmer was not in good health, when he made his payments in the month following the month in which they fell due, will not relieve the association. The local financial secretary was fully advised of Palmer's illness,

and payments made under those circumstances could not, as provided by the rules of the order, constitute a warranty of good health. The very information, which the local secretary received at the meeting of his camp held on May 14th, was a denial of the warranty of good health; and the specific information imparted by Ray Curtis, the son-in-law of Palmer, when he paid the September and November assessments, of the illness of the insured, was likewise a denial of the warranty of good health, which the rules provided the payment imputed.

It cannot be successfully contended that if Palmer had in strict accordance with the by-laws made his payments of April, August, September, November, and December, 1938, and for March and May, 1939, before the last day of each of these months, the condition of his health at such times of payment would in anywise have been material. Nor can it be doubted that under the uniform practice and custom, Palmer, but for his death, could, and doubtless would, have gone on through the years making his overdue payments, and the local secretary and the sovereign camp would have gone on accepting and retaining such payments.

We think that the doctrine of waiver and estoppel removed from the case the provisions for forfeiture and the effect of Code, Section 8047.

The principle of estoppel in equity stands upon the very foundations of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. A fraternal beneficiary association, such as the appellant, is as much subject to the operation of these principles as any other association or person. *Boyle Road & Bridge Co. v. American E. Ins. Co.,* 195 S. C., 397, 11 S. E. (2d), 438; *Smith v. Williams,* 141 S. C., 265, 139 S. E., 625, 54 A. L. R., 964, 19 Am. Jur., Section 34, page 634; *Sovereign Camp, W. O. W. v. Newsom,* 142 Ark., 132, 219 S. W., 759, 14 A. L. R., 903; *Sovereign Camp, W. O. W. v. Moraida,* Tex.

Civ. App., 85 S. W. (2d), 364, Annotation, 108 A. L. R., 685, Annotation, 11 Ann. Cas., 539.

Forfeitures are not favored in the law, and Courts, ██ ██ in order to avoid the odious results of a forfeiture, are not slow in seizing hold of such circumstances as may have been acted on in good faith, and which indicate an agreement on the part of the company or an election to waive strict compliance with the conditions and stipulations in the policy. Continuing a policy in force, and accepting payment of premiums thereon, with full knowledge of facts which, according to a condition of the contract, make it voidable, is a waiver of the condition. One party to a contract will not be permitted to make a show of continued leniency, or a pretense of liberality, repeated with such uniformity as to put another off his guard, and afterwards, by a sudden change in his course of conduct, declare a forfeiture, where the other party is helpless to avert the consequences.

This case is very similar in its facts to the case of *Funderburk v. Sovereign Camp, W. O. W.,* 179 S. C., 80, 183 S. E., 462, and dissimilar in its facts to the case of *White v. Sovereign Camp, W. O. W.,* 184 S. C., 215, 192 S. E., 161, upon which the appellant seems to rely. In the latter case, the testimony disclosed no prevailing custom or practice with reference to the payment of delinquent dues, and no evidence that the financial secretary of the camp in which the insured carried his membership, had any knowledge or information which would have put him on notice that the insured was not in good health.

The appellant complains because the Circuit Judge allowed the plaintiff to introduce in evidence a portion of a certain letter addressed to the sovereign camp, and signed by numerous members of the local camp, in which it was stated that it was customary in all camps with which they were familiar for monthly dues to be paid at any time before the financial secretary submitted his monthly report to the sovereign camp. This letter had to do with a claim not connected in any way with the present action; it was written in aid of

another member of the local camp who had made delinquent payments.

We agree with the appellant that the letter itself was incompetent, but we fail to see in what manner it was prejudicial. The letter dealt only with a custom with reference to receiving delinquent payments before the financial secretary submits his regular monthly report to the sovereign camp. The issue in the present case did not deal with the custom prevailing with reference to payments made prior to the sending out of the secretary's regular monthly report, but rather with the custom and practice of allowing and acquiescing in the payment of delinquent dues by members not in good health. In our opinion, the letter was irrelevant, but it would be going too far to say that it was prejudicial under all the facts of this case.

It follows, from what we have said, that the trial Court committed no error in refusing to direct a verdict.

Nor do we think that the lower Court erred in refusing to grant a new trial, which motion was made upon substantially the same grounds which we have already discussed.

An opinion was heretofore prepared and filed in this case, but remittitur was held up on a petition for rehearing; the petition was granted, and a re-argument had. This opinion is now substituted in place of the prior opinion, and the other is withdrawn from the file.

Judgment affirmed.

MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE T. S. SEASE concur.

MR. CHIEF JUSTICE BONHAM concurs in part.