18518

GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,
v. F. M. HERLONG, Sr., Respondent

(149 S. E. (2d) 51)

*Messrs. Cooper, Gary, Nexsen & Pruet* and *William A. Dallis,* of Columbia, and *W. R. Symmes,* of St. Matthews, *for Appellant,*

*Messrs. Gressette & Gressette,* of St. Matthews, *for Respondent,*

*Messrs. Cooper, Gary, Nexsen & Pruet,* and *William A. Dallis,* of Columbia, and *W. R. Symmes,* of St. Matthews, *for Appellant,*

June 8, 1966.

BRAILSFORD, Justice.

General Motors Acceptance Corporation brought this action in claim and delivery for the possession of an automobile belonging to F. M. Herlong and appeals from an adverse verdict and judgment. The company claimed the automobile as assignee of a conditional sales contract dated October 30, 1963, whereby Herlong promised to pay a deferred balance of $3,147.08 in an initial installment of $50.00 on November 20, 1963, and thirty-six successive monthly installments of $86.03 commencing December 14, 1963. This contract contained a clause declaring time to be of the essence and a clause giving the company the option to demand payment in full in case of default in any installment. On August 5, 1964, a sum the equivalent of the July installment was due and unpaid. GMAC invoked the acceleration clause, refused to accept payment of less than the full amount unpaid and instituted this action. The primary issues on this appeal are whether the company had waived its right to rely upon the delinquency which existed on August 5 as ground for acceleration or whether it was estopped from doing so. The facts relied upon to establish waiver and estoppel are clear and undisputed.

Of nine monthly installments which had fallen due prior to August 5, 1964, the sum of $86.03 was unpaid on that date. The first installment became due November 20, 1963, and was paid eight days late. The second, which became due December 14, 1963, was paid in part on January 7, 1964, and the balance on January 14, 1964, thirty days after the due date. Thereafter, Herlong was consistently more than a month—sometimes as much as two months—late in his payments. On one occasion the company accepted a partial payment three weeks after the installment to which it was to be applied had become due, and, on three other occasions, accepted part payment more than a month after the due date. In several instances, checks given by Herlong in payment of delinquent installments were dishonored and later redeemed by him. This pattern of defaults and delayed payments was consistent with prior dealings between the parties over more than twenty years. There is no evidence that any representative of the company ever remonstrated with Herlong concerning his delinquencies or made any effort to bring him into compliance with the terms of payment. He testified that over the years during which he had done business with GMAC, its representatives had been very lenient, that they would do "anything most."

On July 7, 1964, Herlong redeemed a dishonored check which he had given in payment of the May installment. On August 3, 1964, the company accepted a payment of $86.03 and applied it to the June installment, leaving a like amount due and unpaid. Two days later the company undertook to exercise its option to accelerate by letter dated August 5, 1964, demanding immediate payment of the entire balance of $2,494.87 or delivery of the automobile forthwith. Herlong was notified that if he failed to comply with the demand by "August 7, 1964, 12:00 Noon," the company would take action. GMAC refused to yield to Herlong's entreaties that he be allowed to pay the amount in default, and the sheriff seized the automobile on August 11, 1964. Herlong did not post a redelivery bond and the automobile was delivered to the company.

As already indicated, there is no dispute about the important facts bearing on the issue of waiver. There is little, if any, dispute about the law. Relying upon what it regards as a non-waiver provision of the contract, the company virtually concedes, and rightly so, that without it the facts would establish waiver.

It is a general rule that a party to a conditional sale contract may expressly or impliedly waive the right to insist upon strict performance of the terms of sale by the other party. "The seller will not be permitted to declare a forfeiture of the rights of the buyer for nonperformance of any of the vital terms or conditions of the contract where such nonperformance has been with the express or clearly evinced tacit or implied consent of the seller." 78 C. J. S. Sales § 587 c, page 330. "Repeated waivers of default by accepting delayed payments may lull the vendee into making late payments, relying on the expectation that they will be accepted as compliance with his contract. Such a course of conduct will bar the vendor's right to assert a forfeiture for any payment not made at the time stipulated in the original contract, unless prior thereto he has given notice to the vendee that he will hold him to the original terms and the vendee has had a reasonable opportunity to comply therewith." 47 Am. Jur., Sales, Section 899, page 109. See also 15 Am. Jur. (2d), Chattel Mortgages, Section 205; *American National Bank & Trust Co. v. Byrd,* 191 Miss. 457, 3 So. (2d) 850; *Trudeau v. Lussier,* 123 Vt. 358, 189 A. (2d) 529; *Geroy v. Upper,* 182 Or. 535, 187 P. (2d) 662, 174 A. L. R. 1355; *Franklin v. Gilbert Ice Cream Company,* 191 Wash. 269, 71 P. (2d) 52, 55; *Smith v. Carleton,* 185 Or. 672, 205 P. (2d) 160.

We quote from *American National Bank & Trust Co. v. Byrd, supra:*

"That appellant made no objection to the manner of making the first five monthly payments nor the delay in making them. It thereby ratified that course of dealing.

For that reason, the appellant had no right to declare the entire indebtedness due and demand payment therefor on account of the delay in making the sixth monthly payment without having previously notified appellee it would demand that payment on time,"

GMAC cites *Lundberg v. Switzer,* 146 Wash. 416, 263 P. 178, 59 A. L. R. 131, and quotes from that opinion what it refers to as the "applicable doctrine," in part, as follows:

"The appellants cite a long line of cases from this and other courts holding that the right of forfeiture cannot be exercised without demand and a reasonable opportunity to comply after there has been a waiver of strict performance by the acceptance of delayed payments. *About this rule there is no controversy as it is firmly written into the law.* The question here is not as to the rule, but whether it applies where as in this case there is an express agreement by which the parties stipulated that acceptance of delayed payments should not be considered as a waiver of strict performance as to other payments or conditions under the contract. * * *" (Emphasis added.) 263 P. 179, 59 A. L. R. 133.

The court held that the contractual provision referred to was valid, and that, under its terms, the past practice of accepting late payments was not a waiver of strict performance thereafter. GMAC, relying upon the following provision of the subject contract, insists that the issue here is within the rationale of the decision in *Lundberg:*

"The seller's acceptance of any installment or payment after it or the full amount may have become due and payable hereunder shall not be deemed to alter or affect, the purchaser's obligations or the seller's rights hereunder with respect to any *subsequent* payment or *default* therein." (Emphasis ours.)

On August 3, 1964, Herlong was in default to the extent of $172.06. On that date, GMAC accepted payment from him of one-half of this existing delinquency. No de-

fault occurred between the acceptance of the payment and August 5, when GMAC attempted to accelerate the unmatured installments, or August 11, when the automobile was seized.

By its very terms, the contract clause relied upon ■ is applicable only in case of a default subsequent to the acceptance of a payment and here there was none. The contract terms are not opposed to a finding of waiver. Instead, this provision bears heavily, if not conclusively, the other way. As a natural corollary to the proposition stated therein, the clause recognizes that the acceptance of a late payment will affect the obligee's rights with respect to existing defaults.

By accepting part payment of the existing delinquency on August 3, the company exercised its option against acceleration and forwent, at least until a subsequent default should occur, any right to demand payment in full.

"* * * This entitled the defendant Lussier to an election; to excuse the default and regard the terms for payment as still operative, or exercise the option to demand full payment of the balance due. He could not pursue both courses at the same time.

"* * * A partial payment made after a default which is accepted by a chattel mortgagee is regarded as a waiver of the strict legal rights of the obligee and a relinquishment of the right to demand a forfeiture. * * *" *Trudeau v. Lussier, supra,* 123 Vt. 358, 189 A. (2d) 529, 534, 535.

We are also satisfied that the facts of this case ■ justified the submission of the issue of estoppel to the jury. (1) The conduct of the creditor was calculated to lead the debtor to believe that strict compliance would not be insisted upon, and he had no knowledge or means of knowledge that the creditor would abruptly about face. (2) The debtor did rely upon the conduct of the creditor. (3) In so relying, he failed to pay the installment maturing July 14, 1964, when due or before

August 5, 1964, and thereby lost the right to pay his debt in installments—a prejudicial change of position.

It has been said for this court that "(t)he principle of estoppel in equity stands upon the very foundations of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate." *Palmer v. Sovereign Camp, W. O. W.,* 197 S. C. 379, 15 S. E. (2d) 655, 661. The doctrine has been expounded in many decisions, West's South Carolina Digest, Estoppel, Key 52, which show that the considerations set forth above made the issue for the jury.

The rule formulated in Restatement of the Law, Contracts, Section 300, raises a bar, in appropriate cases, where one party has been lulled into the belief that his imperfect performance of the contract is satisfactory. Illustration 1 under this section is based upon facts which are strictly analogous to those involved here.

Herlong offered evidence intended to establish an express agreement by GMAC to extend time for payment to August 14, 1964. In view of our conclusion on the issues of waiver and estoppel, we need not consider the point that this evidence did not raise a jury issue because the claimed agreement was not supported by a consideration.

The remaining ten questions argued in the brief all relate to claimed errors which, if sustained, could only result in a new trial. This court adheres to the just and logical rule that error is not reversible unless prejudice to the complaining party may have resulted therefrom. *Cumbie v. Cumbie,* 245 S. C. 107, 139 S. E. (2d) 477. Herlong was entitled to an instruction in his favor on the possessory phase of the action; or, at least, under applicable law, a verdict in his favor was demanded by clear and undisputed evidence. Therefore, the errors complained of could not have resulted in prejudice to GMAC on this issue. *Childs v. Allstate Ins. Co.,* 237 S. C. 455,

463-464, 117 S. E. (2d) 867. The seizure of the automobile was not justified by law, and Herlong suffered damage therefrom. The sum assessed by the jury appears to be temperate in amount, and we are not persuaded that GMAC is aggrieved thereby. If not, the errors complained of, if errors there be, are harmless. If GMAC is aggrieved by the sum assessed as damages, it may point out in appropriate and timely petition those alleged errors which it conceives to have resulted in prejudice to it on this aspect of the case.

Affirmed.

Moss, Acting C. J., Lewis and Bussey, JJ., and Lionel K. Legge, Acting J., concur.