### 19255

ALLSTATE INSURANCE COMPANY, Respondent, v. Willard Leroy SMOAK, et al., of whom Carolina Casualty Insurance Company is, Appellant.

(182 S. E. (2d) 749)

*Messrs. Brockington & Brockington,* of Charleston, *for Defendant-Appellant Carolina Casualty Insurance Company,*

*Messrs. Buist, Moore, Smythe & McGee, Gibson, Gibbs & Krawcheck, Pritchard, Myers, Morrison & Bloom,* and *Grimball & Cabaniss,* all of Charleston, *for Defendant-Respondents,*

*Messrs. Brockington & Brockington,* of Charleston, *for Defendant-Appellant Carolina Casualty Insurance Company, in reply,*

July 26, 1971.

LITTLEJOHN, Justice:

This appeal is from a jury verdict in a declaratory judgment action brought by Allstate Insurance Company to have its uninsured motorist coverage declared inapplicable to an accident involving Allstate's insured, Willard Smoak. He was in collision with the truck of William Seabrook, to whom Carolina Casualty Insurance Company had issued a policy. The effective date of Seabrook's policy is the pivotal question presented to our court.

On July 24, 1964 Willard Smoak was operating his 1964 Chevrolet automobile and collided with a 1954 GMC truck owned by William Seabrook, d/b/a Seabrook Transfer and Storage Company, a common carrier. As a result of the accident Smoak was injured. At the time of the collision Allstate had in effect an automobile liability policy insuring Smoak, which contained an endorsement protecting him against injuries caused by an uninsured motorist.

After the accident, Smoak and Buffalo Insurance Company, Smoak's workmen's compensation insurer, having paid workmen's compensation claims, brought an action against Seabrook to recover for Smoak's injuries and medical expenses. Smoak's summons and complaint were served upon his insurer, Allstate, on the belief that Seabrook's GMC truck was an uninsured vehicle at the time of the accident.

On June 2, 1967 Allstate commenced this declaratory judgment action against Smoak, Buffalo, Seabrook, and Carolina Casualty for a judicial declaration that Seabrook's truck was not an uninsured vehicle and that Allstate would not therefore be liable for any verdict procured by Smoak against Seabrook.

Seabrook had an automobile liability policy issued on July 13, 1964, by Carolina Casualty, with dates of coverage indicated therein as August 1, 1964 to August 1, 1965. Allstate contends that by reason of an oral binder the policy became effective on July 10, 1964, and that accordingly, Seabrook was covered by Carolina Casualty on July 24, 1964, the day of the injuries.

The declaratory judgment action came on for trial in February 1970. At the close of the testimony the court submitted to the jury a single question: "Was William Seabrook insured with Carolina Casualty Insurance Company on July 24, 1964?" The jury answered "yes." Carolina Casualty appeals; we reverse.

The operative facts relative to issuance of the Carolina Casualty policy may be summarized chronologically as follows:

Until April 1964 Seabrook's common carrier vehicles were covered for public liability insurance as required by law, with Pennsylvania National Insurance Company. The policy had been written by its licensed agent in Charleston, Dovell & Dovell, and Seabrook's premiums were financed by AFCO, a finance company in Atlanta.

In April 1964 Seabrook defaulted in the payment of premiums and Pennsylvania National cancelled his policy, effective May 27, 1964. On April 27, 1964 the South Carolina Public Service Commission notified Seabrook that he must obtain other insurance by May 27, 1964.

Seabrook make an unsuccessful effort to have the Pennsylvania National insurance reinstated. On May 22, 1964, the Public Service Commission again wrote Seabrook, informing him that unless coverage was obtained, he must cease operation on May 27, 1964.

On May 25, 1964 Seabrook wrote the Public Service Commission, claiming that he would be covered by Pennsylvania National.

On May 27, 1964 the Commission informed Seabrook that no letter of reinstatement had been received and ordered him to cease operation.

On June 5, 1964 Seabrook requested that Dovell & Dovell obtain coverage for him elsewhere. Dovell was unable to write such motor carrier insurance with any company it was licensed to represent and attempted unsuccessfully to get insurance through the Canal Insurance Company in Greenville.

On June 24, 1964, while the Dovell Agency was still attempting to place the insurance, Seabrook contacted Louis Martens of the Martens-Davis Agency in Charleston and requested quotations for public liability insurance on his vehi-

cles. On that same day, Martens wrote William Landreth of the Southeastern Insurance Service in Greenville, the licensed representative for Carolina Casualty, for a quotation. On July 1, 1964 Landreth replied and quoted rates.

On July 6 Seabrook learned that his negotiations with Canal were at an end. On July 7, 1964 Seabrook had Martens write Landreth for details of the necessary down payment to place insurance with Carolina Casualty.

On July 9, 1964 Landreth replied to Martens' letter concerning the necessary down payment.

On July 10, 1964, in Martens' office, Seabrook and Martens filled out a Carolina Casualty Insurance form for liability coverage. Seabrook falsified the application form by falsely naming his "present carrier" as Pennsylvania National Insurance Company, and giving the "present rates" and "present limits" of that coverage. He also falsely stated that his "present policy" was not being cancelled and that he was changing insurance because "Applicant is not satisfied with present set-up." On that date Seabrook gave Martens a check for $577.30.

At this point there is a sharp conflict in the testimony. At trial Seabrook testified that Martens had informed him coverage was immediately effective on July 10, the date of his $577.30 payment. Martens testified, however, that he was not licensed agent for Carolina Casualty and had no authority to bind it orally to coverage; that Seabrook had not specified that he needed insurance immediately; that he never told Seabrook he would be covered immediately; and that Seabrook had told him that he had coverage until August and wanted the coverage to become effective on August 1, 1964.

On July 13, 1964 Southeastern Insurance Service issued Carolina Casualty's policy, signed by Landreth as agent, with a policy period of August 1, 1964 to August 1, 1965 written into the policy.

On July 14 Martens mailed the original policy and liability insurance certificate cards to Seabrook.

On July 17 Carolina Casualty mailed its certificate of insurance to the Public Service Commission, indicating an effective date of August 1, 1964.

On July 18 Landreth mailed to Martens a copy of the certificate filed with the Public Service Commission, which Martens sent on to Seabrook the following day.

On July 20 the Public Service Commission wrote Seabrook informing him that it had received a certificate of insurance effective August 1, 1964, and advising him that it would release his licenses on August 1 so that he could resume business. It would appear that Seabrook never ceased operation so that he was without insurance during all of June and a disputed portion of July 1964.

On July 23 the South Carolina Highway Department received liability insurance certificate cards signed by Seabrook certifying that insurance was effective August 1, 1964 to August 1, 1965. On July 24 the accident occurred. Smoak and his workmen's compensation insurance carrier sued Seabrook, and subsequently this declaratory judgment action was brought.

By its appeal Carolina Casualty challenges primarily the charges of law made by the lower court. We are called upon first to determine whether the lower court erred in charging the jury that Martens was Carolina's agent as a matter of law and was authorized to make an oral contract binding it to effect coverage as of July 10.

The trial judge relied upon Section 37-233 (Code of Laws 1962) which reads as follows:

"Who deemed agents of insurance companies.—Any person who (a) solicits insurance in behalf of any insurance company, (b) takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, (c) advertises or otherwise gives notice

that he will receive or transmit any such application or policy, (d) shall receive or deliver a policy of insurance of any such company, (e) shall examine or inspect any risk, (f) shall receive, collect or transmit any premium of insurance, (g) shall make or forward any diagram of any building or buildings, (h) shall do or perform any other act or thing in the making or the consummating of any contract of insurance for or with any such company, other than for himself or (i) shall examine into and adjust or aid in adjusting any loss for or in behalf of any such insurance company, whether any such acts shall be done by employee of such insurance company or at the instance or request of such insurance company, shall be held to be acting as the agent of such insurance company for which such act is done or risk is taken."

A careful analysis of the statute, our cases interpreting it, and the treatises, compels us to conclude that the trial judge erred in charging the jury as a matter of law that because Martens had done certain things enumerated in the statute he became Carolina Casualty's agent to bind the company orally in this instance.

Because the trial judge in effect directed a verdict against Carolina Casualty on this pivotal issue the evidence must be viewed in the light most favorable to it. When this is done it becomes questionable whether Martens falls within the purview of the statute. The statute encompasses two classes of persons: employees of insurance companies and those acting "at the instance or request of such insurance company." If Martens did not fall within the class of persons acting for insurance companies, the section has no application to him. *Feagan v. Royal Insurance Company*, 122 S. C. 532, 115 S. E. 808 (1923). See generally, 44 C. J. S. Insurance § 143, page 805.

Where the relationship of principal and agent comes into being by reason of appointment or agreement, and is admitted, there still often remains the question

of extent of authority of the agent. An insurance company has the right to appoint an agent and restrict his authority. In such case the principal is not answerable for acts of the agent outside the scope of his authority unless there is involved such issues as apparent authority, estoppel or ratification.

By a like reasoning, when and if one becomes an agent of an insurance company by reason of the operation of statute 37-233 the extent of the authority of the statutory agent must be determined. We do not think it can be said as a matter of law that every statutory agent coming into being by reason of the statute can be said to be a general or unlimited agent.

Under the statute Martens may have become Carolina Casualty's agent for certain purposes, but, at best from Allstate's standpoint, the extent of that agency authority was properly a question of fact for the jury. The statute itself does not impose absolute liability on insurers for all acts by "agents." *Cook v. Canal Insurance Company*, 245 S. C. 238, 140 S. E. (2d) 166 (1965).

If absolute liability were imposed the distinction between agents and brokers would be obviated. Our court has ruled that Section 37-233 does not prohibit insurance companies, who necesarily have to transact their business through licensed agents, from limiting the power of such licensed agents. *Cauthen v. Metropolitan Life Ins. Co.*, 189 S. C. 356, 1 S. E. (2d) 147 (1939). It follows *a fortiori* that the authority of statutory agents is not unlimited.

A broker is ordinarily one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the insured or with a company selected by the broker himself. Appleman, Insurance Law and Practice, § 8726, Page 262.

A broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from the ordinary insurance agent who is employed by an insurance company to solicit and write insurance in the company.

Where one has no agency license with the insurer, and is requested by the insured to place the business, he is a broker. *Tri-City Transportation Co. v. Bituminous Casualty Corp.*, 311 Ill. App. 610, 37 N. E. (2d) 441 (1941).

Whether a broker represents the insurer or insured depends upon the facts in each case. Generally, an insurance broker is the agent of the insured, and not the insurer. The mere fact that he receives a commission from the insurer for placing the insurance does not change his character as an agent of the insured. *Monast v. Manhattan Life Ins. Co.*, 32 R. I. 557, 79 A. 932 (1911).

It has been stated that the insurance broker is primarily the agent of the person first employing him, and thus where he is employed to procure insurance, he is the agent of the insured. *Reserve Insurance Co. v. Duckett*, 240 Md. 591, 214 A. (2d) 754 (1965).

We find in the Appleman treatise at § 8727, citing to our case of *Cook v. Canal Insurance Company, supra,* the following:

"And it has been held, properly it would seem, that a statute providing that an insurance solicitor should be deemed the insurer's agent does not apply to an independent insurance broker."

An insurance broker, who is the agent of the insured, cannot be converted by reason of the statute into an agent of the insurer without evidence creating an inference that he was acting at the "instance or request" of the company.

As a general rule a broker acting for the insured has no authority to bind the insurer. *Kelly v. Empire Fire & Marine Ins. Co.*, 237 Or. 443, 391 P. (2d)

770 (1964). The fact that the insurer furnished the broker an application blank which was given to the person requesting coverage does not make the broker an agent of the insurer in issuing the policy. Appleman, *supra,* at § 8730.

It was clearly error to rule, as a matter of law, that Martens was the agent of Carolina Casualty for binding it orally. Such ruling is not justified by the statute or the authorities.

The other issues raised by appellant concern the effect of the trial judge's charge, that, if the jury should find that an effective agreement was consummated on July 10, 1964, then no cancellation of that agreement could be effected prior to the date of the accident on July 24. Objection to this charge was timely made.

The charge grew out of plaintiff's contention that if an oral contract of insurance came into being on July 10, Rule 57 of the Public Service Commission prohibited a cancellation without giving thirty days written notice. Plaintiff argues that any agreement to make the effective date of the policy August 1, in lieu of July 10, was void. A review of the record convinces us that neither the pleadings nor the evidence raise issues warranting such a charge, and accordingly, the exceptions which challenge the charge of the trial judge are sustained.

Reversed and remanded.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.