1700

PALMER & CAY/CARSWELL, INC., Appellant v. CONDOMINIUM/
APARTMENT INSURANCE SERVICES, INC., and Colonial Penn
Insurance Co., of whom Colonial Penn Insurance Co., is Respondent.

(409 S.E. (2d) 806)

Court of Appeals

*W. Joseph Isaacs,* of *Isaacs & Harvey,* Columbia, *for appellant.*

*Julianne Farnsworth,* of *McNair Law Firm,* Columbia, *for respondent.*

Heard Sept. 10, 1991.

Decided Oct. 7, 1991.

SANDERS, Chief Judge:

Appellant Palmer & Cay/Carswell, Inc. ("Palmer & Cay"), an insurance agency, sued respondent Colonial Penn Insurance Co. ("Colonial Penn"), an insurance carrier, and Condominium/Apartment Insurance Services, Inc. ("C/AIS"), formerly a broker of insurance policies, seeking "recovery of a premium allegedly due as a result of midyear cancellation of an insurance policy." The Circuit Court granted summary judgment for Colonial Penn. We reverse and remand.

The principles of law applicable to granting summary judgment are routine. Summary judgment should be granted only where "indisputable facts exist on which reasonable minds cannot differ. Summary judgment is not appropriate where further inquiry into the facts is desirable to clarify the application of the law." *Rothrock v. Copeland,* — S.C. —, 409 S.E. (2d) 366 (S.C. Sup. Ct. 1991) (Davis Adv. Sh. No. 21 at 11,.13) (citations omitted). The facts of this case are more complex.

Cal Fed Partners purchased an insurance policy from the John D. Carswell Company, an insurance agency. The Carswell Company obtained the policy from C/AIS. Colonial Penn issued the policy. The exact nature of the relationship between Colonial Penn, C/AIS and the Carswell Company is the main issue in this case.[1]

The Carswell Company transferred a portion of its assets to Palmer & Cay. Cal Fed, thereafter, requested cancellation of the policy. Palmer & Cay notified C/AIS of the cancellation. Colonial Penn issued a credit to C/AIS for the unearned premium. Palmer & Cay then refunded the unearned premium to Cal Fed. However, C/AIS did not reimburse Palmer & Cay for the refund. Nor did Colonial Penn. This action ensued.

The Circuit Court granted summary judgment in favor of Colonial Penn on two grounds. First, the Court ruled that, because Colonial Penn had credited C/AIS with the refund, it did not have to reimburse Palmer & Cay. The court ruled further, and in the alternative, that Colonial Penn was entitled to summary judgment because Palmer & Cay/Carswell issued the refund "as a volunteer."

We address, *seriatim*, the two grounds on which the Court granted summary judgment.

---

[1] Colonial Penn, C/AIS and the Carswell Company had a relationship comparable to that of Messrs. Tinker, Evers and Chance, *i.e.*, "Tinker to Evers to Chance." The phrase "Tinker to Evers to Chance" is firmly rooted in baseball lore. In the early part of this century, Joe Tinker, Johnny Evers and Frank Chance played shortstop, second base and first base for the Chicago Cubs. One July day in 1910, *New York Mail* columnist Franklin Pierce Adams, in a hurry to get to the Polo Grounds for the game between the Cubs and the New York Giants and needing eight lines to complete his column, quickly typed out what eventually became the most celebrated lines of poetry ever written about baseball:

These are the saddest of possible words—
"Tinker to Evers to Chance"
Trio of Bear Cubs and fleeter than birds—
"Tinker to Evers to Chance"
Ruthlessly pricking our gonfalon bubble,
Making a Giant hit into a double,
Words that are weighty with nothing but trouble—
"Tinker to Evers to Chance."

G. Dickey, *The History of National League Baseball* 62 (1979).

"Tinker to Evers to Chance" is generally understood to describe literally the typical double play combination: shortstop to second baseman to first baseman. More importantly for our purposes, it is a metaphor for any situation where one passes something to another who then passes the thing to still another. In this case, Colonial Penn passed the insurance policy to C/AIS which then passed it to the Carswell Company. Hence, "Tinker to Evers to Chance." What role each played in the relationship is the principal subject of our inquiry.

## I

Although the Court did not refer specifically to the law of agency, the parties agreed, in oral argument, that the essential inquiry is whether C/AIS was the agent of Colonial Penn. Quite obviously, one cannot satisfy a debt owed another by paying his or her own agent. Therefore, unless it is indisputable that C/AIS was not the agent of Colonial Penn, summary judgment should not have been granted based on the fact Colonial Penn had credited C/AIS with the refund.

Numerous documents, included in the record, are relevant on the issue of agency. One of these documents specifically provides: "[C/AIS] shall be and act as an independent contractor." That document further provides: "Nothing contained herein shall be construed to create the relationship of employer and employee between [Colonial Penn] and [C/AIS]." In light of these provisions, the decision by the Circuit Court to grant summary judgment is entirely understandable.

On the other hand, an independent contractor can be an agent. *State ex rel. McLeod v. C & L Corp., Inc.*, 280 S.C. 519, 313 S.E. (2d) 334 (Ct. App. 1984). Elsewhere in the document, C/AIS is referred to as Colonial Penn's "Manager." The document provides that Colonial Penn "appoints the Manager as its legal representative and true and lawful attorney to act in the Company's behalf." The document specifies that the duties of C/AIS include, among other things, the procuring, underwriting and servicing of binders, policies and contracts. C/AIS is specifically given "binding authority." "One who is appointed to establish a contractual relationship between the principal and a third person is an agent." *Id.* at 526, 313 S.E. (2d) at 338.

Nor is the fact that C/AIS is a broker necessarily controlling. Under certain circumstances, a broker can be an agent for an insurance company. *Allstate Ins. Co. v. Smoak*, 256 S.C. 382, 182 S.E. (2d) 749 (1971). Like the terms agent and independent contractor, the terms agent and broker are not mutually exclusive. *Restatement (Second) of Agency* § 1 (1958).

Under the circumstances, further inquiry into the facts is desirable to clarify whether C/AIS was, in fact, the agent of Colonial Penn.

## II

The second ground on which the Circuit Court granted summary judgment was based on a certain letter generally describing the assets transferred from the Carswell Company to Palmer & Cay. According to the letter, "payments from companies relating to the insurance business written prior to 12/1/85 are the property of Carswell." The insurance policy purchased by Cal Fed was dated September 10, 1985. Relying on this fact, the Court ruled that Palmer & Cay was not obligated to make the refund to Cal Fed, and consequently, Palmer & Cay "cannot now demand reimbursement for the refund from Colonial Penn."

Once more, the Court overlooked another document included in the record. The affidavit of Palmer & Cay's executive vice president states, in no uncertain terms, that "among the assets transferred from the John D. Carswell Company to Palmer & Cay, Inc. were all rights relating to an insurance policy sold to Cal Fed." Therefore, it appears that there is also a question of fact as to whether Palmer & Cay has the right to seek reimbursement for the refund.

Reversed and remanded.

GARDNER and GOOLSBY, JJ., concur.