496 S.E.2d 417

**David HIOTT, Respondent,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Appellant.**

**No. 2774.**

Court of Appeals of South Carolina.

Heard Nov. 6, 1997.

Decided Dec. 22, 1997.

524

Sean K. Trundy and Jon L. Austen, both of Pratt–Thomas, Pearce, Epting & Walker, Charleston, for appellant.

Darrell T. Johnson, Jr., Hardeeville, for respondent.

CURETON, Judge:

This action was brought by Respondent David Hiott, individually and d/b/a/ Waste Haulers (Hiott), against Guaranty National Insurance Company (GNIC) for a declaration that GNIC was liable for damages arising from an accident in which his vehicle was involved on September 16, 1994. From a non-jury verdict in favor of Hiott, GNIC appeals. We reverse.

### *Facts*

Marion D. Jones (Jones), manager of The Marion D. Jones Agency (Agency), is an "independent agent" and a broker of personal and commercial insurance. Hiott has been a client of the Agency for several years, with Jones acting as his broker.

The policy in question was placed by the Agency through The Kimbrell Company (Kimbrell), which is a managing general agent for GNIC. Hiott purchased the policy by making a down payment of $625 and financing the balance of the premium through Premium Service Corporation of Columbia (PSC). Hiott's agreement with PSC appoints PSC as Hiott's attorney-in-fact, with full authority to cancel the policy in the event of default in premium payments, subject to ten (10) days prior notice of PSC's intent to cancel. The policy provides that the insured may cancel the policy by "advance written notice of cancellation."

On March 1, 1994, the Agency requested an endorsement to the policy. An additional premium of $962 was charged. Hiott informed Jones that he would pay when the endorsement "came in." When the endorsement "came in," the Agency billed Hiott but was not paid. Hiott had been a customer of the Agency for many years, and although he was habitually late in making his premium payments, he always paid them. When the Agency did not receive Hiott's payment, they paid it for him.[1] It appears Hiott never repaid the Agency for the additional premium. The payment of the additional premium is not an issue here but does support

---

1. Jones testified his agency had an arm's length relationship with Kimbrell, and the agency was "on the hook personally for the money, so we paid [for the endorsement]."

Jones's assertion that the Agency "bent over backwards" to keep Hiott's insurance in force.

Jones, whose deposition is the only testimony in the record, testified the Agency gets a list every Monday from PSC of past-due accounts and as a convenience to its customers attempts to contact these insureds. The Agency warns the insured that payment must be made by a certain date or "cancellation will be issued." There is a 15 day "lag time," during which the Agency can usually postpone cancellation if the insured makes the payment. Even after cancellation, the Agency is able to reinstate the policy if payments can be caught up within 30 days of the cancellation date.

On July 14, 1994, PSC mailed to Hiott the following notice:

PLEASE TAKE NOTICE THAT BECAUSE OF YOUR FAILURE TO MAKE PAYMENT UNDER YOUR PREMIUM SERVICE AGREEMENT WITH THIS COMPANY, WE SHALL EFFECT CANCELLATION OF THE POLICY, PURSUANT TO THE POWER OF ATTORNEY EXECUTED BY YOU, UNLESS WITHIN 10 DAYS FROM THE DATE HEREOF, THE AMOUNT DUE SHOWN HEREIN IS RECEIVED IN OUR OFFICE.

–NO FURTHER NOTICE WILL BE SENT TO YOU–

CANCELLATION WILL BE REQUESTED

8/01/94

On August 5, 1994, Kimbrell faxed to the Agency the following message:

WE RECEIVED A NOTICE OF CANCELLATION FROM THE FINANCE COMPANY. PLEASE ADVISE TODAY IF YOU HAVE RECEIVED A REINSTATEMENT, OR IF THE INSURED IS GOING TO PAY ACCOUNT. I WILL HOLD UNTIL TOMORROW AND IF I HAVEN'T HEARD FROM YOU I WILL PROCESS CANCELLATION.

On August 8, 1994, the Agency received from PSC a copy of the August 4, 1994 Notice which provided in pertinent part:

## NOTICE TO INSURER

PLEASE CANCEL THE ABOVE POLICY PURSUANT TO POWER OF ATTORNEY HELD BY US. SAID POWER BEING HEREBY EXERCISED BY REASON OF INSUREDS FAILURE TO PAY WHEN DUE INSTALLMENT UNDER PREMIUM SERVICE AGREEMENT WITH THIS COMPANY EXECUTED PURSUANT TO TITLE 39 CHAP. 27, CODE OF LAWS OF SOUTH CAROLINA, 1976,

CANCEL AS OF 08/05/94 OR AS SOON THEREAFTER AS STATUTORY, REGULATORY OR CONTRACTUAL RESTRICTIONS PERMIT, SENDING THE UNEARNED PREMIUM TO THIS COMPANY AT THE ABOVE ADDRESS FOR DISTRIBUTION AS PROVIDED BY LAW.

WARRANTED, THAT NOT LESS THAN 10 DAYS WRITTEN NOTICE HAS BEEN MAILED TO INSURED OF INTENT TO CANCEL THE POLICY, THAT COPY HEREOF IS BEING MAILED TO INSURED AS NOTICE OF CANCELLATION AT INSUREDS LAST ADDRESS AS SET FORTH IN THIS COMPANYS RECORDS, AND THAT THE LICENSE NUMBERED ABOVE IS VALID AND SUBSISTING AS OF THE DATE HEREOF.

## NOTICE TO INSURED [2]

THIS NOTICE SHALL BE VOID AND INEFFECTIVE IF PAYMENT OF YOUR INDEBTEDNESS HAS BEEN MADE TO US ON OR BEFORE THE OTHERWISE EFFECTIVE DATE OF CANCELLATION.

On August 9, 1994, Hiott paid PSC the July premium. The record does not reveal any further communication from PSC to the Agency or any communication from GNIC to Hiott. Jones called Hiott at least weekly seeking payment.

On August 22, 1994, Kimbrell sent another fax to the Agency reading:

TO DATE WE HAVE NOT RECEIVED THE REINSTATEMENT FOR THE ABOVE INSURED. PER OUR

---

2. Presumably, this form of notice was approved by the South Carolina Department of Insurance pursuant to 25A S.C.Code Ann. Regs. 69–10.

PHONE CONVERSATION 8/5/94, THE INSURED HAD MADE PAYMENT AND REINSTATEMENT WOULD BE FORTHCOMING. IF I DON'T RECEIVE THIS WEEK I WILL HAVE TO CANCEL POLICY. PLEASE CONTACT THE FINANCE COMPANY AND ASK THEM TO FAX US A COPY OF THE REINSTATEMENT.

Jones called Hiott the same day and warned him that if all past due payments were not received by Friday, August 26, 1994, the policy would be canceled.

Finally, on September 6, 1994, Kimbrell notified the Agency by fax that it had received a second cancellation request from PSC and that it would "have to honor their cancellation date." On September 9, 1994, the Agency sent a document entitled "NOTICE OF CANCELLATION" to Hiott stating in part:

YOU ARE HEREBY NOTIFIED THAT THE ABOVE POLICY IS HEREBY CANCELED IN ACCORDANCE WITH THE CONDITIONS OF THE POLICY. SAID CANCELLATION TO BE EFFECTIVE ON AND AFTER THE HOUR AND DATE MENTIONED ABOVE.

The date "mentioned above" is September 18, 1994. Jones testified that the Agency had "no legal standing" to send this Notice, and that it was "an attention getter" sent in an attempt to garner payment from Hiott.

Hiott tendered payment to PSC by check dated September 15, 1994, to cover the August, September and October payments. The record is unclear, but it appears from Jones's deposition that the check was deposited in PSC's bank account on September 22, 1994 and returned by the bank to PSC for insufficient funds on September 24, 1994.

### Issue On Appeal

The sole issue posited for our review is whether there is any evidence in the record to support the trial court's decision that the insurance contract was not canceled until September 18, 1994, the date specified in the Agency's September 9, 1994 correspondence to Hiott.

### Standard Of Review

The parties agree this is an action at law. In a nonjury action at law, the judge's findings of fact will not be

disturbed on appeal unless they are without evidentiary support. *Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996). The trial court's findings of fact have the same force and effect as a jury verdict unless it committed some error of law leading to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Noisette v. Ismail,* 299 S.C. 243, 384 S.E.2d 310 (Ct.App.1989), *rev'd on other grounds,* 304 S.C. 56, 403 S.E.2d 122 (1991). We must affirm the trial court if there is any evidence that reasonably supports its decision. *Id.* In reviewing the findings, we must view the evidence and all its reasonable inferences in the light least favorable to the losing party below. *Id.*

 GNIC argues that there is no evidence to support the trial court's finding that the Agency was its agent; and that the only evidence presented establishes that the Agency was Hiott's agent. Hiott responds that the Agency is clearly GNIC's agent under both statutory and case law. He points to PSC's August 4, 1994 Notice of Cancellation which was sent to GNIC and identifies the Agency as "agent."

South Carolina Code Ann. § 38–43–10 (1989) (entitled: "Persons Considered Agents of Insurers") provides a person is an agent who:

 (a) solicits insurance in behalf of an insurer,

 (b) takes or transmits other than for himself an application for insurance or a policy of insurance to or from an insurer,

 (c) advertises or otherwise gives notice that he will receive or transmit insurance applications or policies,

 (d) receives or delivers a policy of insurance of an insurer,

 (e) receives, collects, or transmits any premium of insurance, or

 (f) performs any other act in the making of an insurance contract for or with an insurer, other than for himself,

whether these acts are done by an employee of an insurer or at the instance or request of an insurer, must be a licensed agent of the insurer for which the act is done or the risk is taken unless provided otherwise in Section 38–43–20.

In the interpretation of statutes, this court must determine and give effect to the intention of the legislature. *Republic Textile Equip. Co. v. Aetna Ins. Co.*, 293 S.C. 381, 360 S.E.2d 540 (Ct.App.1987). The purpose of statutes such as § 38–43–10 is to protect the insuring public. *Id.* The statute encompasses two classes of persons: insurance company employees and those acting "at the instance or request of" an insurer. *Id.* at 386, 360 S.E.2d at 543.

If one becomes an agent of an insurance company by reason of the operation of this statute, the extent of the authority of the statutory agent must still be determined. *Allstate Ins. Co. v. Smoak*, 256 S.C. 382, 182 S.E.2d 749 (1971). Every statutory agent coming into being by reason of the statute cannot be said to be a general or unlimited agent. *Id.* The extent of such agent's authority is a question of fact for the factfinder. *Id.*

Generally, an insurance broker is the agent of the insured, not the insurer. *Allstate*, 256 S.C. 382, 182 S.E.2d 749. The mere fact that he receives a commission from the insurer for placing the insurance does not change his character as an agent of the insured. *Id.* The terms agent and broker are not mutually exclusive. *Palmer & Cay/Carswell, Inc. v. Condominium/Apartment Ins. Servs., Inc.*, 306 S.C. 1, 409 S.E.2d 806 (Ct.App.1991). Under certain circumstances, a broker may be an agent for an insurance company. *Id.* A broker, who is the agent of the insured, cannot be converted by reason of the statute into an agent of the insurer without evidence creating an inference that he was acting at the "instance or request" of the insurer. *Allstate*, 256 S.C. at 386, 182 S.E.2d at 754.

The trial court found that Jones was "clearly" GNIC's agent for purposes of § 38–43–10. The only factual support given to satisfy the requirements of *Allstate* was that the August 4th notice named Jones as agent. However, that notice was sent by PSC. Moreover, the notice in no way identifies for whom the Agency was an Agent. Generally, an agency relationship may be circumstantially proven by the conduct of a purported agent who exhibits pretense of authority with the knowledge of the alleged principal. *Fernander v. Thigpen*, 278 S.C. 140, 293 S.E.2d 424 (1982). Here, there is no contention that PSC had any authority to declare the

Agency to be GNIC's agent. Additionally, we see no indication in the record that GNIC held out the Agency as its agent. Nor do we see an indication that the Agency represented itself as GNIC's agent with GNIC's knowledge. In fact, Jones testified that the Agency was Hiott's agent, not GNIC's agent. We reverse the trial court on this issue.

GNIC further argues that the trial court was mistaken in finding the policy was not properly canceled in accordance with S.C.Code Ann. § 38–77–120(2) (1989 & Supp. 1996). GNIC acknowledges that § 38–77–120(2) requires a 15 day notice of cancellation, but argues that a premium service company need only comply with S.C.Code Ann. § 38–39–90 (1989 & Supp.1996) to effectuate a cancellation. GNIC asserts that PSC mailed the insured at least 10 days written notice of intent to cancel in accordance with § 38–39–90(b). It asserts further that PSC issued a notice of cancellation, not less than 5 days after the expiration of the 10 day period, requesting cancellation of the policy in accordance with § 38–39–90(c). GNIC states further that since this was all that was statutorily required, any correspondences from Kimbrell to the Agency were "mere surplusage," but it admits that the policy was not canceled until September 6, 1994, although effective August 5, 1994.

Hiott, citing *GMAC v. Herlong*, 248 S.C. 55, 149 S.E.2d 51 (1966), responds that because his July payment was accepted on August 9, 1994, after the purported August 5th cancellation, PSC waived the right to accelerate the account until a new default occurred. He asserts it is reasonable to infer that the September cancellation notice was necessitated by a new default, and the July notice became irrelevant after the July payment was made. We find this argument to be without merit. At the time Hiott made the July payment, the August payment was then due. PSC was not required to withdraw the cancellation notice at that time because Hiott was still in default on his financing agreement with PSC. *Herlong* is inapplicable to this case.

Hiott also argues that the notices are conflicting and inconsistent. He asserts cancellation dates of both August 5 and September 18 are given. He states that the August 4th notice, entitled "Notice of Cancellation," is only a "request to cancel" and is not a cancellation of the policy. Hiott also

asserts there is no statutory authority for either the August 4th or 5th cancellation even under § 38–39–90. In addition, Hiott argues the September 18th Notice is consistent with repeated statements during August of intent to cancel in the future. Hiott states "both the law and the policy" require the notice of cancellation to give a date on which cancellation is effective, which the August 4th notice does not.

While notice of cancellation need not be in any particular form, it must be of such character as to positively and unequivocally indicate to the insured that the company does not intend to be bound by the contract any longer. *Lundy v. Lititz Mut. Ins. Co.*, 232 S.C. 1, 100 S.E.2d 544 (1957). Any ambiguity in the notice must be resolved in favor of the insured. *Id.* Our review of the August 4th notice to cancel does not produce the infirmities claimed by Hiott. The notice indicates clearly that PSC wanted GNIC to cancel the policy as of August 5, 1994, unless the law prohibited that cancellation date. Moreover, as to the September 18th cancellation date contained in the Agency's September 9th correspondence to Hiott, Jones acknowledged that the Agency had no authority to cancel the policy, and that authority rested in PSC, Hiott's attorney-in-fact. Moreover, we do not see that Hiott could have been confused by or misled by the September 9th notice because, according to his brief, "[he] reviewed the Notice of Cancellation, effective September 18, after the wreck."

Section 38–39–90 governs cancellation of insurance contracts by a premium service company. It provides, in relevant part:

(a) When a premium service agreement contains a power of attorney enabling the company to cancel any insurance contract listed in the agreement, the insurance contract may not be canceled by the premium service company unless the cancellation is effectuated in accordance with this section.

(b) The premium service company shall mail the insured at least ten days' written notice of its intent to cancel the insurance contract unless the default is cured within the ten-day period.

(c) Not less than five days after the expiration of the notice, the premium service company may thereafter request in the name of the insured cancellation of the insurance contract by mailing to the insurer a notice of cancellation.... The

premium service company shall also mail a notice of cancellation to the insured at his last address as set forth in its records by the date the notice of cancellation is mailed to the insurer. This mailing constitutes sufficient proof of delivery.

(g) Cancellations of insurance contracts by premium service companies must be effected exclusively by the forms, method, and timing set forth in this chapter.

Section 38–77–120 provides, in pertinent part:

(a) No cancellation or refusal to renew by an insurer of a policy of automobile insurance is effective unless the insurer delivers or mails, to the named insured at the address shown in the policy, a written notice of cancellation or refusal to renew.

Section 38–39–90 clearly states that it contains the only requirements a premium service company must follow to cancel a policy it has funded. We hold the requirements of § 38–77–120 do not apply to the instant case.

We are therefore constrained to hold PSC canceled the policy in accordance with the requirements of § 38–39–90. Subsection (c) requires the notice to the insurer be sent "not less than five days after the expiration" of the 10 day notice period. PSC's initial notice to Hiott was mailed July 14th. PSC was required to wait at least 5 days after the expiration of this notice, supposedly until July 30th, to request cancellation. The second notice was mailed August 4th, which was more than five days after expiration of the initial 10 day notice. *Cf. South Carolina Ins. Co. v. Brown,* 280 S.C. 574, 313 S.E.2d 348 (Ct.App.1984) (discussing notice requirements under predecessor statute).

Hiott next contends PSC's August 4th Notice requesting cancellation effective August 5th does not comply with the policy's advance notice requirement and, therefore, is defective. The policy provision requiring "advance written notice of cancellation" by the insured is obviously for the benefit of GNIC, not Hiott. Here, Hiott's agent gave GNIC a one day notice to cancel. It does not appear to us that GNIC in any way objected to the notice. Hiott cannot complain of inadequate notice because he had known since July 14, 1994 that PSC intended to cancel the policy on August 1, 1994. This argument also lacks merit.

Finally, the trial court found that Hiott's contract with PSC itself was invalid because it was not notarized. We disagree. The 1989 revision to this code section eliminated the requirement that the insured's signature be notarized. S.C.Code Ann. § 38–39–70 (1995).[3] Nevertheless, Hiott argues the trial court's holding should be sustained because the premium service agreement did not comply with S.C.Code § 62–5–501 which relates to the execution of a power of attorney. This argument was never ruled upon by the trial court. *Talley v. S.C. Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 347 S.E.2d 99 (1986). In any event, the general rule of statutory construction is that a specific statute prevails over a more general one. *Atlas Food Systems and Servs., Inc. v. Crane Nat. Vendors*, 319 S.C. 556, 462 S.E.2d 858 (1995). Finally, § 38–39–90(g) requires PSC to use only those forms approved by the director of the Department of Insurance in accordance with S.C.Code Ann. § 38–39–110 (1989).

Accordingly, the order of the trial court is

**REVERSED.**

HOWELL, C.J., and HOWARD, J., concur.

---

**3.** We also note that Chapter 39 of Title 38 was again amended in 1993, with the legislature not seeing fit to reinstate the notarization requirement.