18167

Trudy M. BURNS, Respondent, v. PRUDENCE LIFE INSURANCE COMPANY, Appellant

(134 S. E. (2d) 769)

*Messrs. Rufus M. Ward* and *Ward, Hammett & Howell,* of Spartanburg, *for Appellant,*

*Messrs. Wofford & Snyder,* of Greenville, *for Respondent,*

February 12, 1964.

LEWIS, Justice.

The plaintiff brought this action as beneficiary to recover death benefits under a policy of life insurance issued by the defendant Prudence Life Insurance Company on the life of her husband, Ward Russell Burns. The sole issue in the trial of the case in the lower court was whether or not the policy was in force and effect at the death of the insured. This involved a determination of whether a check given by the insured, and subsequently dishonored for lack of funds, was unconditionally accepted by the company in payment of the required premium for reinstatement of the policy which had lapsed for nonpayment of the premium. At the conclusion of the testimony, the defendant moved for a directed verdict in its favor upon the ground that the evidence conclusively showed that the check was not so accepted. The motion was denied and the issues submitted to the jury which returned a verdict for the plaintiff. The defendant has appealed and the sole issue to be decided is whether there was any evidence to sustain the conclusion reached by the jury that the defendant unconditionally accepted the check of the insured in payment of the premium required for reinstatement of his policy and thereby waived forfeiture thereof.

. The policy of insurance in question was originally issued by the defendant to the insured on November 8, 1960.

The premiums were paid in quarterly installments of $55.00, and the policy was kept continuously in force until April 10, 1962, when it lapsed for nonpayment of the premium due. Upon being contacted by an agent of the defendant, the insured, on May 24, 1962, issued to the defendant his check, drawn on a bank in Greenwood, South Carolina, for a quarterly premium of $55.00 for reinstatement of the policy. The defendant maintained in a bank in Columbia, South Carolina, an account from which only the home office in Chicago, Illinois, could make withdrawals. The check of the insured for the reinstatement of the policy was deposited in this account on May 28, 1962, and a notice sent by the agent to the home office that $55.00 had been collected from the insured. The home office of the defendant then withdrew the funds from the South Carolina bank and an unqualified premium receipt was mailed to the insured showing that the policy lapsed on April 10, 1962, was reinstated as of June 4, 1962, the amount received as $55.00, and that the next premium would be due on September 10, 1962.

The check given by the insured for the reinstatement of the policy was dishonored for lack of funds when presented to his bank and was charged back to the defendant's account on June 1, 1962. The home office was promptly notified of this action and wrote to its South Carolina agent on June 15, 1962, enclosing the dishonored check, with instructions to have the insured sign a reinstatement application and to secure from him a guaranteed form of remittance for the premium. No written notice of the dishonor of the check was sent by the defendant to the insured. However, upon receipt of the communication from the home office, an agent of the defendant personally contacted the insured in the early part of July, 1962, and told him that, since the check had been dishonored for lack of funds, he would have to get cash for the check. The insured told the agent that he was going to make a deposit in the bank to take care of the check and asked that it be redeposited. As

requested by the insured, the agent kept the check instead of securing a guaranteed form of remittance, as he was instructed to do by the home office. At the same time, the insured signed a reinstatement application dated July 16, 1962, which contained the following acknowledgment that the policy was then lapsed for nonpayment of premium:

"For Reinstatement of Policy No. 905636. The above described policy having · lapsed because of nonpayment of the premium, I hereby apply for reinstatement of said policy and in order to obtain the same and as a basis for such reinstatement, I make the following statements: * * *."

The application also contained representations by the insured that, "since the date said policy lapsed," he had not suffered injury or sickness of any kind.

The foregoing reinstatement application was forwarded by the agent to the home office of the defendant, and the check of the insured dated May 24, 1962, which had once been dishonored for lack of funds, was redeposited to the defendant's account in the Columbia bank on July 16, 1962, with a notation on the deposit slip: "Burns reinstatement, $55.00." Notice of the redeposit was given to the home office. Upon the receipt of the reinstatement application at the home office a notation was made on the face thereof in handwriting as follows: "O.K. to reinstate 7/17/62."

The check of the insured was presented to the bank on July 19, 1962, and was dishonored a second time. The returned check was received at the home office of the defendant on the 24th or 25th day of July, 1962. On July 27, 1962, the home office wrote to its South Carolina agency reiterating its prior instruction to obtain some guaranteed form of remittance from the insured for the premium. The insured died on July 28, 1962, before the last letter was received by the defendant's South Carolina agency and, therefore, its instructions could not be carried out. The company retained the check until the trial of this case, at which time it was introduced in evidence.

The records of the bank account of the insured showed that at no time subsequent to May 24, 1962, the date he first gave the check to reinstate his policy, did he have as much as $55.00, the amount of the check, in his account.

The plaintiff contends that the foregoing facts and circumstances are susceptible of the reasonable inference that the defendant unconditionally accepted the worthless check of the insured as payment of its premium claim, and thereby waived forfeiture of the policy for nonpayment of such premium.

As a general rule, in the absence of an express or implied agreement to the contrary, a check does not constitute payment unless it produces payment in cash, the presumption being that the check is accepted on condition that it be paid. *Bewley-Darst Coal Co. v. Laurens Gin & Fuel Co.,* 126 S. C. 219, 119 S. E. 589. *Baker v. State Highway Department,* 166 S. C. 481, 165 S. E. 197.

The foregoing principles are equally applicable to the payment of insurance premiums, and ordinarily the taking of a check for an insurance premium is conditional upon payment of the check upon presentation. An insurance company may, however, accept a check in complete satisfaction of the premium claim and, where such is done, either expressly or impliedly, the company cannot declare the policy forfeited upon dishonor of the check, but is relegated to its action on the check. 29 Am. Jur. 843, Section 536; 14 Appleman, Insurance Law and Practice, Section 8144. The rule is thus stated at page 523 of the citation from Appleman: "The mere giving or sending of a worthless check to the insurer does not effect the payment of a premium; the result being, if such check is given for the first premium, that coverage never goes into effect; and if given for a subsequent premium, that the coverage is not thereby prevented from lapsing. In order for a worthless check to constitute a valid payment, it must have been unconditionally accepted as such by the insurer. In the usual instance, acceptance of a check by the insurer is considered

to be conditional only, and the burden rests on the insured to see that the check is honored when presented."

An excellant annotation dealing with questions relating to the effect of the dishonor of a check given in payment of an insurance premium will be found in 50 A. L. R. (2d), beginning on page 630.

In this case, upon receipt of the check and before it was dishonored, the defendant issued and delivered to the insured its receipt reciting that the premium had been paid. This is relied upon as evidence showing an unconditional acceptance of the check in payment of the premium.

Generally, whether a receipt issued by the insurer upon taking a check, subsequently dishonored, in payment of a premium operates as an unconditional payment depends upon the intent of the parties to be ascertained from all of the facts and circumstances.

We think that the record here clearly establishes that the check of the insured was not unconditionally accepted as payment of the premium due. Upon notice of the dishonor of the insured's check, he was contacted by an agent of the defendant, informed that his policy had lapsed, and that it would be necessary for him to sign a reinstatement application. He signed the reinstatement application acknowledging that his policy was lapsed at that time for non-payment of premium, although he then had in his possession the receipt issued by the defendant. There certainly could have been no doubt in the insured's mind, when he signed the reinstatement application, that his policy was then lapsed because of the dishonor of his check, for which the defendant had issued the premium receipt. Not only did the defendant promptly, after notice that the check had been dishonored, notify the insured of the forfeiture of his policy for nonpayment of the premium, but the insured acknowledged that it had lapsed and applied in writing for its reinstatement. The facts clearly negative any reliance by the defendant upon the worthless check as

unconditional payment of the premium or that the insured considered that he held an unconditional receipt. When the insured acknowledged in his application for reinstatement that his policy was lapsed for nonpayment of the premium, after the issuance of the receipt and the dishonor of the check, he clearly eliminated any effect that the receipt might have had as evidence of the unconditional acceptance of the check in payment of the premium.

When the insured signed the application for reinstatement of the policy, the same check which had once been dishonored, was tendered to the defendant in payment of the required premium with assurance by the insured that he would make a deposit to cover it. No receipt was issued by the defendant upon the second tender of the check. In view of the acknowledgment by the insured that his policy was then lapsed, the situation was no different than if the insured had issued a new check in payment of the premium to reinstate the policy. There is no circumstance which would take the second tender of the check out of the general rule that the acceptance of the check was conditional upon its being paid.

The check was dishonored a second time on July 19th, and notice of its dishonor was received by the defendant on July 24th or 25th. On July 27th a letter was written by the defendant to its South Carolina agency with instructions to get from the insured some form of guaranteed payment. The insured died on July 28th before he could be contacted. The check was dishonored about nine days before the death of the insured. The defendant was notified of its dishonor about 3 or 4 days before the insured's death. There is nothing to show that the defendant failed to exercise due diligence to contact the insured after notice that the check had been dishonored, or that any act of the defendant could have in any way lead the insured to assume that his second tender of the worthless check had been unconditionally accepted as payment of the premium.

The check of the insured was retained in the possession of the defendant until the trial of this case on May 1, 1963, when it was placed in evidence. The plaintiff contends that the retention of the check by the defendant was evidence that it relied upon the check as payment of the premium instead of forfeiture of the policy. Certainly it cannot be successfully contended that such inference would arise from the the failure of the defendant to return the check to the insured, for he died within three or four days after the instrument came back into its hands in due course from the bank. Therefore, the inference must arise, if at all, from the fact that the defendant retained possession of the check from the death of the insured until the date of the trial.

We do not think that the mere physical retention of the check by the defendant under the circumstances constituted a waiver of the forfeiture of the policy. The policy had lapsed for nonpayment of premium. The check had been given for the premium required for its reinstatement. It was not paid when presented and there is no inference that the defendant retained the check other than as evidence that the premium had not been paid. *Gunter v. Philadelphia Life Ins. Co.,* 130 S. C. 1, 125 S. E. 285.

Under the undisputed evidence, the policy of insurance lapsed prior to the death of the insured for nonpayment of premiums, and the motion of the defendant for a directed verdict should have been granted.

Reversed and remanded for entry of judgment for the defendant.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.