KENNEDY, Justice.
Peggy Short Haupt, individually; as ad-ministratrix of the estate of her husband, William M. Haupt, Jr.; and as next friend of her minor daughter, Jennifer Haupt; filed an action against Midland National Life Insurance Company (“Midland”) and other defendants. She alleged breach of contract, conspiracy to defraud, outrage, negligence, and bad faith in relation to Midland’s refusal to pay the proceeds of a life insurance policy that she claims insured her husband. The trial court entered a summary judgment on Haupt’s claims against Midland and made that judgment final pursuant to Rule 54(b), A.R.Civ.P. In this appeal, Haupt raises arguments only in regard to her breach of contract claim. Because we hold that Midland was entitled to judgment as a matter of law based on undisputed facts, we affirm.
William M. Haupt, Jr., was an insurance broker who worked for several insurance companies, among them Midland and Central United Life Insurance Company (“Central”). He worked with R.E. Pack and William Alcorn, selling insurance. Alcorn was a “soliciting agent” of Midland.
With Alcorn as soliciting agent, Haupt, in late January 1983, applied for a $250,000 life insurance policy from Midland, On the application Haupt designated his method of payment of the premiums as “check-o-matic.” That method involved his submitting to Midland a bank authorization form that allowed Midland automatically to withdraw from Haupt’s bank account $25 monthly as the premium became due. On April 10, 1983, Midland issued Haupt a life insurance policy. One month later, in early May 1983, Alcorn sent a request to Midland to cancel Haupt’s life insurance, and on May 18, 1983, Midland mailed a notice of cancellation of the life insurance policy to William M. Haupt, Jr. The cancellation notice was never returned to Midland, although Peggy Haupt states that she did not know whether Midland mailed a notice of cancellation to her husband. Midland did not withdraw premiums from Haupt’s bank account after it received the cancellation request.
William Haupt died in November 1984. Peggy Haupt discovered that William had a $50,000 life insurance policy with Central, a $75,000 life insurance policy with Midland, and the $250,000 life insurance policy with Midland that is the subject of this action. Central paid the full amount of the $50,000 policy. Midland paid Peggy the full amount of the $75,000 policy, but refused payment on the $250,000 policy because, among other reasons, it had received no premiums from the Haupts for that policy for the 18 months preceding William’s death. William Haupt had paid for the $75,000 policy from Midland by the automatic withdrawal method, and the deduction from his bank account for that policy was shown on his bank statements. The $250,000 policy contained this provision concerning nonpayment of the premiums:
“We grant a grace period of thirty-one days for the payment of each premium except the first one. If a premium has not been paid by its due date, this con *1321 tract will stay in force during the grace period. If the premium is not paid by the end of the grace period, this contract will end and have no value except as we state under contract value options.”
Haupt argues that she is entitled to receive the $250,000 proceeds from the life insurance policy, although no one paid the premiums for it. Haupt contends that because Midland had the bank authorization form, it should be estopped from asserting the non-payment of the premiums as a basis for its refusal to pay the proceeds of the life insurance policy. In support of that contention she cites Colonial Life & Accident Insurance Co. v. Wilson, 246 F.2d 922 (5th Cir.1957), and Stark v. Illinois Bankers’ Life Association, 220 Mich. 108, 189 N.W. 862 (1922). She argues in her brief that “William Haupt tendered to Midland payment of the premiums and thereby fulfilled his contractual obligations.”
Grimes v. Liberty National Life Insurance Co., 551 So.2d 329 (Ala.1989), is factually more similar to this case than the cases Haupt cites. In Grimes, Barbara Grimes sued Liberty National Life Insurance Company (“Liberty National”), alleging, among other claims, breach of contract based on Liberty National’s refusal to pay the proceeds of her husband’s life insurance policy. The policy had lapsed because Grimes had not paid the premiums. On that ground, this Court affirmed the summary judgment for the insurance company on the breach of contact claim. Id.
We reject Haupt’s contention that Midland should be estopped from asserting nonpayment of premiums as a basis for refusing to pay the policy. To be sure, the general rule in Alabama is that failure to pay the premium on a life insurance contract does not of itself forfeit the contract, Grimes at 332, but, if the policy provides, as Haupt’s policy did, that failure to pay the premium causes the contract to end, then the insured is contractually bound either to pay the premiums or lose the coverage. Id. In light of the provision of the insurance policy terminating the policy if the insured fails to pay the premiums, Haupt’s argument will not withstand scrutiny. Haupt should not expect the policy to remain in force even if the premiums are not paid. To allow her to accept the benefits of the policy without paying the premiums would allow her to receive the benefit of the bargain at no cost. Indeed, the “bargain” was never consummated. No doubt, William Haupt gave Midland a bank authorization form. His choice of the automatic withdrawal method of payment should not and cannot relieve him of his duty to remit his premium payment, however.
Haupt argues that because Midland had the bank authorization form, a holding that does not allow her to recover on the contract because the premiums were not paid necessarily imposes upon a person a duty as a matter of law to inspect his or her bank statements. We disagree. We hold only that Haupt had a contractual obligation to pay the premiums in order to receive the insurance coverage. If to fulfill that duty to pay the premiums it was necessary as a practical matter for the Haupts to check the bank statement, that is not an onerous or unreasonable burden to place on them. William Haupt’s other Midland life insurance policy was also paid by automatic withdrawal, and the deduction for that policy appeared on his bank statements. Peggy Haupt testified that when she looked through the bank statements after William’s death, she could see. on the bank statements that the premiums for the $75,000 policy had been paid through the bank drafts.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.