**Elisha FLOYD, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, et al., Defendants.**

**No. 97–D–496–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Jan. 20, 1998.

Stephen D. Heninger, Birmingham, AL, for Plaintiff.

Eugene D. Martenson, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Allstate Insurance Company's ("Allstate") Motion For

Final Summary Judgment filed October 23, 1997. On the same date, Allstate filed a Memorandum Brief In Support of its Motion ("Def.'s Br."), and the depositions of Plaintiff Elisha Floyd, Allstate employee Don Harrison, Allstate employee Sherry Redden, and the Affidavit of Allstate employee Keith Mangum. Plaintiff filed her Brief And Evidentiary Response ("Pl.'s Resp.") on November 6, 1997, to which Allstate filed a Reply ("Def.'s Reply") on November 13, 1997. Also before the court are the supplemental pleadings of both Parties submitted on January 16, 1998, in response to a request from the court. After careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that Allstate's Motion For Final Summary Judgment is due to be granted.

## *JURISDICTION*

■ The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity).[1] The parties do not contest personal jurisdiction or venue.

## *SUMMARY JUDGMENT STANDARD*

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

---

1. Plaintiff's Complaint appears to allege claims against Allstate and other unnamed "Defendants." (Compl. at 1.) The residence of a fictitious party is to be disregarded for purposes of removal; thus the court properly exercises subject matter jurisdiction. 28 U.S.C. § 1441(a).

Further, although Plaintiff's Complaint alleges claims against "Defendants," her Response to Allstate's Motion For Final Summary Judgment refers to a singular "Defendant," (*see* Pl.'s Resp.

at 1), and Plaintiff has not identified any Defendants other than Allstate. Accordingly, the court finds that the fictitious Defendants named in Plaintiff's Complaint are due to be dismissed, there being no provision for fictitious party practice under federal law. *See New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir.1997); *McCree v. Sam's Club*, 159 F.R.D. 572, 573 n. 1 (M.D.Ala.1995).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587; *see also Anderson,* 477 U.S. at 249.

### DISCUSSION

On November 23, 1995, Plaintiff's sister was involved in an accident while operating Plaintiff's 1987 Nissan Maxima. Plaintiff filed a claim with Allstate, who refused coverage, contending that Plaintiff's policy had lapsed on November 9, 1995 due to Plaintiff's failure to remit payment, and that the policy was not reinstated until November 28, 1995, when Plaintiff finally did remit payment. Plaintiff's Complaint alleges that: (1) Allstate has breached its insurance contract with Plaintiff; and (2) the denial of coverage was done in bad faith. (Compl. at ¶¶ 2–4.) Allstate contends that because Plaintiff's policy had lapsed on November 9, 1995, denial of Plaintiff's claim was proper. (Answer at 1; Def.'s Br. at 3.) The threshold issue for the court's resolution, therefore, is whether Plaintiff's policy was in effect on November 23, 1995—the date of the accident. Even when viewing the record in a light most favorable to the Plaintiff, the non-moving party, the court finds that it was not.

On May 8 or 9, 1995, Plaintiff obtained policy coverage for a 1995 Chevrolet Corsica through Allstate. (Pl.'s Resp. at 1; Def.'s Br. at 1.) This policy, numbered "6 45 687925," was for a six-month term, running from May 9, 1995, to November 9, 1995. (*See, e.g.,* Pl.'s Resp. at 1; Def's Br. at 1–2.) The entire premium amount of $614.00 was paid on May 8, 1995. (Pl.'s Resp. at 1; Def.'s Br. at 2.) On June 28, 1995, Plaintiff contact-

ed Allstate about obtaining insurance for a 1987 Nissan Maxima. (Pl.'s Resp. at 1; Def.'s Br. at 2.)

Allstate contends that the Nissan Maxima was added to Plaintiff's existing policy covering the Chevrolet Corsica, and that coverage on the Nissan Maxima thus also ran from June 29, 1995, to November 9, 1995. (Def.'s Br. at 2.) The amount of the premium on the Nissan Maxima was prorated to reflect the shortened coverage period—June 29, 1995 to November 9, 1995, rather than the May 9, 1995 to November 9, 1995 time period originally established for the Chevrolet Corsica. (Def.'s Br. at 2; Floyd Depo., Ex. 4.) Plaintiff contends that when she contacted Allstate, "she wanted the Maxima insured for six months, and assumed it was covered until December 28, 1995 ... [s]he was not told it was being put on the same policy with the Corsica." (Pl.'s Resp. at 1.)

On October 12, 1995, Allstate sent Plaintiff a "Notice Of Renewal," which Plaintiff admits receiving. (Mangum Aff., Ex. A; Floyd Depo. at 25, Ex. 5.) The "Notice Of Renewal" was for policy number "6 45 687925," and stated that "THIS IS A RENEWAL OFFER ONLY. INSURANCE DESCRIBED IN THIS DOCUMENT WILL GO INTO EFFECT ONLY IF YOUR PREMIUM PAYMENT IS RECEIVED BY U.S. WHEN DUE. A BILL WILL BE MAILED TO YOU SEPARATELY." (*Id.* (capitalization in original).) The "Policy Period And Premium Period" specified on the renewal notice was November 9, 1995 to May 9, 1996. Two cars were listed on the renewal notice; a 1995 Corsica, and a 1987 Maxima. (*Id.*)

On approximately October 20, 1995, Plaintiff received a bill for $999.40—the premium amount for the new policy period described in the October 12, 1995 renewal notice (November 9, 1995 to May 9, 1996). (Floyd Depo. at 25–28; Mangum Aff.) Allstate did not receive payment for the policy renewal until November 27, 1995, and sent Plaintiff an "Automobile Policy Reinstatment Notice" on November 28, 1995.[2] (Mangum Aff., Ex.

---

2. Plaintiff's deposition establishes that her grandfather wrote a check for $999.40 on October 30, 1995. The check apparently was placed on Plaintiff's dresser, and she only learned of its existence on the day before Thanksgiving 1995, when it was then mailed to Allstate. (Floyd

D; Floyd Depo. at 37–38, Ex. 6.) The reinstatement notice stated that Plaintiff's policy "was cancelled effective 12:01 a.m. Standard Time on November 9, 1995. Your policy was reinstated at 12:01 a.m. Standard Time on November 28, 1995." (*Id.*) The "Policy Number" indicated was "6 45 687925 05/09," and the "Description" indicated a "95 Chevy Corsica" and an "87 Nissan Maxima." (*Id.*) The premium payment of $999.40 was prorated because of the policy's cancellation between November 9, 1995 and November 28, 1995— Plaintiff received a premium refund of $103.90 for that time period. (Mangum Aff.; Floyd Depo. at 38, Ex. 7.)

■ In the week before Thanksgiving 1995, Plaintiff contacted Allstate to inform the company that her Chevrolet Corsica had been sold and that she wished to drop the vehicle from her insurance policy. (Redden Depo. at 15; Floyd Depo. at 30.) At that

Depo. at 25–31.) While offering these facts as a reason for her failure to remit payment by November 9, 1995, Plaintiff retained ultimate responsibility for remitting payment on or before the renewal date. Her failure to do so because she was unaware of the fact that her grandfather had left a check on her dresser is simply not relevant to the issue of whether Plaintiff's policy was in effect on November 23, 1995—the date of the accident. While the court is sympathetic to this apparent break-down of communication, the responsibility, ultimately, was Plaintiff's.

Further, the court notes that the evidence does not support a finding, (nor does Plaintiff argue), that Plaintiff's mailing of the premium payment prior to the accident constitutes acceptance of an offer from Allstate. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Anderson,* 294 Ala. 451, 318 So.2d 687 (1975), *reh'g denied,* Sept. 11, 1975.

3. In contrast to the numerous documents Plaintiff received prior to November 9, 1995, informing Plaintiff that her policy would expire on November 9, 1995, absent renewal, Plaintiff contends that she first learned of her policy's cancellation during this conversation. (Floyd Depo at 30–34.)

This raises the question of the type of notice Allstate was required to give Plaintiff prior to canceling her policy. Plaintiff contends that Allstate never sent her a specific notice that her policy was being cancelled for non-payment until after cancellation occurred. (Pl.'s Supp. Mem. at 1–2 (citing Alabama Code § 27–23–23 (requiring written notice)).) Allstate contends that Plaintiff's policy was a "self-terminating policy ... renewable at Allstate's discretion if renewal was offered to the insured at the end of the term

time, Allstate informed the Plaintiff that her insurance coverage had been cancelled on November 9, 1995 for non-payment, (Redden Depo. at 16; Floyd Depo. at 30–31), and that she needed to submit payment as soon as possible.[3] (Redden Depo. at 17; Floyd Depo. at 31.) On November 23, 1995, after this conversation, Plaintiff's sister was involved in an accident with the Nissan Maxima.

Plaintiff's principal contentions are that: (1) she was not told that the Nissan Maxima was being put on the same policy as the Chevrolet Corsica; (2) she thought coverage for the Nissan Maxima ran through December 28, 1995; (3) Allstate never told her not to drive the vehicle because she was not covered; (4) nothing was done to eliminate Plaintiff's impression that the Chevrolet Corsica and the Nissan Maxima were covered by two separate policies; and (5) she "had no reason to believe there would be no coverage

and if accepted by premium payment by the insured." (Def.'s Supp. Submission at §§ 1–2.) Allstate contends that Plaintiff "elected *not* to renew her policy, and failed to accept Allstate's offer to renew." (*Id.* at ¶ 3.) Thus, Allstate argues that specific notice was not required.

In support of its assertion, Allstate cites to *Redden v. Alfa Mutual Fire Ins. Co.,* 631 So.2d 976 (Ala.1994), for the proposition that no specific notice of cancellation was required in this case. In *Redden,* the court quoted from *Employers Insurance Co. of Alabama, Inc. v. Hare,* 292 Ala. 637, 299 So.2d 243 (1974), which held that "[w]here an agreement provides for termination at a certain time, no notice of termination is necessary." *Redden,* 631 So.2d at 978. The *Hare* court found that "no such notification was required to be given.... The express provisions of the complainant's policy of insurance were sufficient to apprise him of the policy period and the time when his insurance coverage would expire." *Id.* The court reiterated the principle that "the parties to a contract are free to prescribe a fixed term for the duration of that contract and that, when the agreement provides for a termination at a certain time, no notice of that termination is required." *Id.* (citing *Childress v. Foremost Ins. Co.,* 411 So.2d 124 (Ala.1982)).

Accordingly, the court finds that: (1) Allstate was not required to provide Plaintiff with any specific notice of cancellation other than the notice of termination already provided in her policy documents and in her renewal documents; and (2) contrary to Plaintiff's assertion, Alabama Code Section 27–23–23 and 27–23–25 do not apply under the facts of this case. (Pl.'s Supp. Memo at 1.)

on the Maxima." (Floyd Depo. at 22; Pl.'s Resp. at 3.) The court finds Plaintiff's arguments unpersuasive.

The court finds that Plaintiff knew, or should have known that both vehicles were covered under one policy, namely policy number "6 45 687925," and that the policy was set to expire November 9, 1995, absent renewal. First, various documents associated with Plaintiff's policy clearly indicate that the two vehicles were covered under only one policy—policy number "6 45 687925"—not that each vehicle was insured under separate policies. (*See* Floyd Depo., Exs. 3, 5, 7, 8.) Second, in June 1995, Plaintiff received an amended declaration specifically stating that the Nissan Maxima was being *added* to her existing policy, *not* that a new policy was being issued. (*Id.*, Ex. 4.) This amended declaration described the increased policy premium and indicated that coverage for the Nissan Maxima ran from June 29, 1997, to November 9, 1997. (*Id.*) Third, Plaintiff admits that she submitted a check for $381.20 on June 28, 1995 for insurance on the Nissan Maxima. (Floyd Depo. at 18.) Written in the "For" section of that check is "645 687925"—the number of her existing Allstate policy—not the number of a new or different policy. (*Id.*, Ex. 2.) Fourth, Allstate sent Plaintiff a renewal notice on October 12, 1995 that clearly indicates that both vehicles were covered under one policy and that the renewed policy would run from November 9, 1995 to May 9, 1996. (Mangum Aff., Ex. A; Floyd Depo., Ex. 5.) The notice stated that it was a renewal offer only, and that the insurance described in the document would only go into effect if Plaintiff's premium payment was received by Allstate when due. (*Id.*) Fifth, the bill Plaintiff admits receiving on approximately October 20, 1995, stated that "[t]his bill reflects your renewal offer premium. **Your coverage won't continue unless we receive the Minimum Amount Due before 12:01 a.m. Standard Time on....**" (Floyd Depo. at 25–28; Mangum Aff., Ex. C (emphasis in original).) Although Allstate does not retain copies of bills sent to customers, Keith Mangum states in his Affidavit that Plaintiff's specific information, including her premium due date, would have been specified on Plaintiff's bill. (Mangum Aff. at

¶ 3.) Plaintiff has offered no evidence refuting this assertion. Sixth, Plaintiff's policy clearly states that "[i]f **we** offer to renew **your** policy and **your** required premium payment isn't received when due, you will have rejected our renewal offer. This means that the insurance coverage described in the renewal offer and any endorsements to the renewal offer will not become effective." (Harrison Depo., Ex. 1, p. 3 ("Allstate Indemnity Amendment Of Policy Provisions") (emphasis in original).) Plaintiff does not contend that the exemplar policy in the record is different from the policy she received from Allstate, or that the provisions quoted above were not included in the documents she received.

Seventh, and finally, Plaintiff's deposition testimony establishes that Plaintiff's grandfather took care of most, if not all of the administrative requirements surrounding Plaintiff's insurance, (Floyd Depo. at 19), and that Plaintiff apparently did not bother to read some or all of the documents that she received in the mail from Allstate. (Floyd Depo. at 22, 23.) If, in fact, Plaintiff was unaware of the fact that she had one insurance policy covering both the Chevrolet Corsica and the Nissan Maxima, and that the policy expired November 9, 1995, absent renewal, it is because of her reliance on her grandfather and her failure to read documents sent to her by Allstate. Failure to read contracts will not absolve Parties of responsibilities arising under those contracts or clearly articulated conditions precedent to the renewal of contracts. *See generally Coleman v. Prudential Bache Sec. Inc.*, 802 F.2d 1350, 1352 (11th Cir.1986) (per curiam) ("absent a showing of fraud or mental incompetence, a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed"); *Ex parte Stripling*, 694 So.2d 1281, 1283–84 (Ala. 1997) (holding that even though plaintiffs did not read the contracts before signing, "ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby"). Plaintiff cannot claim that Allstate is responsible

for her not knowing that both vehicles were covered under one policy, and that the policy was set to expire on November 9, 1995, absent renewal, while at the same time admitting to not reading pertinent documents sent to her by Allstate.

In the analogous case of *Haupt v. Midland National Life Ins. Co.*, 567 So.2d 1319 (Ala. 1990), the plaintiff sued Midland National, alleging, inter alia, breach of contract and bad faith, for refusing to pay the proceeds of her husband's life insurance policy. (*Id.* at 1320.) Midland National argued that the policy terminated for failure to remit premiums. (*Id.* at 1320–21.) Plaintiff argued that she thought premium payments were being automatically withdrawn from her husband's bank account because the bank had been given an authorization form to do so. Nevertheless, no premium payments were ever withdrawn. (*Id.*) In affirming judgment for Midland National, the court stated:

if the policy provides ... that failure to pay the premium causes the contract to end, then the insured is contractually bound either to pay the premiums or lose coverage.... In light of the provision of the insurance policy terminating the policy if the insured fails to pay the premiums, [Plaintiff's] argument will not withstand scrutiny. [Plaintiff] should not expect the policy to remain in force even if the premiums are not paid. To allow her to accept the benefits of the policy without paying the premiums would allow her to receive the benefit of the bargain at no cost. Indeed, the "bargain" was never consummated. No doubt, [Plaintiff's husband] gave Midland a bank authorization form. His choice of the automatic withdrawal method of payment should not and cannot relieve him of his duty to remit the premium payment, however.

[Plaintiff] argues that because Midland had the bank authorization form, a holding that does not allow her to recover on the contract because the premiums were not paid necessarily imposes upon a person a duty as a matter of law to inspect his or her bank statements. We disagree. We hold only that [Plaintiff] had a contractual obligation to pay the premiums in order to receive the insurance coverage. If to fulfill that duty to pay the premiums it was necessary as a practical matter for the Haupts to check the bank statement, that is not an onerous or unreasonable burden to place on them.

*Id.* at 1321.

■ Similarly, Plaintiff cannot argue that her premium was unpaid because she was "unaware" of the fact that her grandfather had left a check on her dresser. The Alabama Supreme Court has stated that it is not "onerous or unreasonable" to expect someone to review their bank statement to ensure that provisions made for the automatic withdrawal of funds are being followed. (*Id.*) It is certainly not "onerous or unreasonable" to expect someone to take responsibility for ensuring that their premium payments are remitted in a timely manner. Plaintiff's reliance on her grandfather, and her failure to read documents sent to her by Allstate, do not relieve her of her duty to timely remit the premium payments on her insurance policy.

Further, Plaintiff was directly informed of the fact that her policy was not in effect during the key conversation between Plaintiff and Allstate that occurred in the week prior to Thanksgiving 1995. This conversation occurred prior to the accident. Even when the evidence surrounding this conversation is viewed in a light most favorable to the Plaintiff, the evidence establishes that during the conversation, Plaintiff was informed that her policy had been canceled as of November 9, 1995 for non-payment. (Redden Depo. at 15–17; Floyd Depo. at 34–37.) Plaintiff does not contend that she was told that her policy was in effect again and that her vehicles were covered during that conversation. All Plaintiff contends is that she was told she had to get her payment in as soon as possible. (Floyd Depo. at 34–37.) When this testimony is analyzed in conjunction with the documents sent by Allstate to the Plaintiff, Plaintiff either knew or should have known that her policy covered both of her vehicles and that it ran through November 9, 1995, absent bar remittance of a renewal premium.

Finally, Plaintiff has not submitted any evidence supporting her "assumption" that

the Nissan Maxima was covered under a separate policy; she has not submitted any evidence of alleged misrepresentations by Allstate, or any documents that would support her mistaken belief. In sharp contrast to Plaintiff's unsubstantiated assertion are: (1) the multitude of documents sent to Plaintiff prior to November 9, 1995 that clearly show the existence of *one* policy covering the Corsica and the Maxima that was set to expire November 9, 1995, absent Plaintiff's renewal; and (2) Plaintiff's testimony that she did not bother to read some or all of the documents sent to her by Allstate.

The court also finds unpersuasive Plaintiff's argument that "[t]he Corsica had been sold and defendant knew it. The Maxima had been totalled and defendant knew it or should have known it. Therefore, plaintiff sent in $999.40, which could not cover anything." (Pl.'s Resp. at 5.) First, this allegation is not entirely accurate. At the time of the conversation that occurred prior to Thanksgiving 1995, all Allstate knew was that the Chevrolet Corsica had been sold; Allstate was not informed of the exact date of sale. (Redden Depo. at 15; Floyd Depo. at 31.) During that conversation, Plaintiff was told that her policy had expired and that she should submit payment as soon as possible. (Redden Depo. at 15; Floyd Depo. at 30–31.) The accident then occurred over Thanksgiving weekend. It was not until *after* the conversation where Plaintiff was told that her policy expired, and after Plaintiff mailed her premium check to Allstate, that Allstate was told that the Nissan Maxima had been involved in an accident. (Redden Depo. at 21, 36–37; Floyd Depo. at 32.)

Finally, the court finds, that contrary to Plaintiff's assertions, Allstate's cashing of Plaintiff's premium check on November 28, 1995 does not support Plaintiff's claims. (*See* Pl.'s Resp. at 3–6.) First, Allstate argues that to the extent Plaintiff's Response to Allstate's Motion For Summary Judgment alleges fraud, Plaintiff's Complaint is limited to claims for breach of contract and "bad faith," and that Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity—which Plaintiff has not done in this action. (Def.'s Reply at 7–8.) Allstate also argues that the premium payment was required because: (1) Allstate was not informed of the exact date of sale for the Corsica, and would not be able to determine a premium refund until that point; (2) that refund could have been applied to the coverage on the Nissan Maxima; (3) the policy would have covered the Nissan Maxima after its repair by Floyd; (4) the policy would provide non-owned coverage to Plaintiff if she was driving any other vehicle with the owner's permission; and (5) "the premium would also provide coverage for any replacement vehicle with respect to the Chevrolet Corsica and would provide uninsured/underinsured motorists coverage that would be doubled by virtue of having two vehicles listed on the Allstate Indemnity policy." (Defs.' Reply at 8–10.) Additionally, the Allstate agent Plaintiff was in communication with, Sherry Redden, testified in her deposition that she was not told about, nor did she know of, the condition of the Nissan Maxima after the accident. (Redden Depo. at 21.) Accordingly, the court finds unpersuasive Plaintiff's contentions regarding Allstate's acceptance of Plaintiff's policy premium on November 28, 1995.

Based on the foregoing, the court finds that Allstate's Motion For Summary Judgment is due to be granted. Even when the evidence before the court is viewed in a light most favorable to the Plaintiff, she has not established a genuine question of fact as to whether her policy of insurance with Allstate was in effect at the time of the accident. Because Plaintiff's contract claim fails, her "bad faith" claim must fail as well. *See, e.g., Loyal American Life Ins. Co. v. Mattiace,* 679 So.2d 229 (Ala.1996) (requiring as an element of proof in a bad faith refusal to pay claim "an insurance contract between the parties and a breach thereof by the Defendants"); *Emanuelsen v. State Farm Automobile Ins. Co.,* 651 So.2d 29 (Ala.Civ.App. 1994) (same).

### ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) Allstate's Motion For Summary Judgment be and the same is hereby GRANTED.

(2) There being no issues remaining for the court's determination, this action be and the same is hereby DISMISSED, each party to bear their own costs.

(3) The court's December 2, 1997 Order setting a pretrial hearing for January 21, 1998 and trial commencing March 2, 1998, be and the same is hereby VACATED.