732 S.E.2d 180

**Hal H. BOYD, Appellant,**

v.

**LIBERTY LIFE INSURANCE COMPANY and SelectQuote Insurance Services, Respondents.**

No. 4985.

Appellate Case No. 2010–166866.

Court of Appeals of South Carolina.

Heard May 7, 2012.

Decided June 13, 2012.

Rehearing Denied Sept. 19, 2012.

George J. Kefalos, PA, of Charleston, and Michelle N. Endemann, of Andrew K. Epting, Jr., LLC, of Charleston, for Appellant.

Robert F. Goings, of Columbia, for Respondents.

GEATHERS, J.

Appellant Hal Boyd appeals from an order of the circuit court granting Liberty Life Insurance Company's (Liberty Life) and SelectQuote Insurance Service's (SelectQuote) joint motion for summary judgment on the ground that no valuable consideration existed to form a contract for life insurance between Boyd and Liberty Life. We affirm.

## FACTS/PROCEDURAL HISTORY

SelectQuote is an insurance broker that offers consumer quotes and comparison information from more than a dozen insurance carriers.[1] On August 19, 2007, SelectQuote sent Boyd a solicitation to replace his existing Mutual of Omaha life insurance policy. Thereafter, Boyd learned his monthly premium with Mutual of Omaha would increase from $336.42 to $1,301.63 on November 18, 2007.

On November 14, 2007, Boyd contacted SelectQuote to inquire about the insurance rates listed in its solicitation. Boyd spoke with SelectQuote Account Manager Elizabeth Grissom, who conducted a phone interview, wherein she obtained Boyd's medical history. During the phone interview, Boyd told Grissom that he was in excellent health; however, he admitted he was a smoker, and Boyd acknowledged he would be getting the smoker's rate. Based on the information Boyd provided, Grissom compared premium quotes from multiple insurance companies; Liberty Life offered the lowest premium quote at a rate of $406.17 a month. Boyd verbally accepted the Liberty Life premium rate, subject to a medical examination and underwriting approval.

---

1. SelectQuote is not an insurance company or licensed to issue contracts of insurance in South Carolina or elsewhere.

In a letter dated November 15, 2007, SelectQuote confirmed the $406.17 monthly premium quoted by Grissom. The letter identified Boyd's underwriting classification as "Preferred Tobacco."[2] Further, the letter explained "[i]f [the] monthly plan is selected [Liberty Life] will set up an automatic payment plan." Additionally, SelectQuote emailed Boyd a checklist to help him complete Liberty Life's insurance application, which instructed him (1) to select automatic bank draft as the form of payment; (2) to complete the premium authorization card; and (3) to provide a voided check imprinted with his name and address.

On November 30, 2007, Boyd submitted to a medical exam. He gave the completed life insurance application to the nurse performing the medical exam on behalf of Liberty Life. The completed application included Boyd's authorization to draft his checking account and a copy of a blank, voided check.

Due to blood pressure problems revealed in Boyd's medical records, Liberty Life approved Boyd's application for the underwriting classification, "Smoker Non–Preferred." On January 11, 2008, Grissom informed Boyd that Liberty Life had approved his application at an adjusted premium rate of $417.73. Boyd verbally accepted the adjusted quote. He then asked Grissom if the policy with Liberty Life was effective as of that day. She responded: "[O]nce I hit the offer button, it goes into issue status. You are issued, you are done. . . ." After this representation, Boyd asked Grissom to fax him a letter "indicating that this policy with Liberty is effective upon my acceptance."

On January 11, 2008, Grissom sent a fax to Boyd stating his application for life insurance had been "approved" by Liberty Life and the policy "will be issued and forwarded to you soon." On January 15, 2008, Boyd called Grissom and explained that the language in the fax did not give him the satisfaction necessary for him to cancel his existing policy. Thereafter, Grissom assured Boyd he had "double coverage" until he cancelled his policy with Mutual of Omaha. However, Grissom advised him to wait to cancel the Mutual of Omaha policy until he had physically received the Liberty Life policy.

---

2. "Preferred Tobacco" refers to a smoker in excellent health.

During the January 15, 2008 phone call, Boyd asked Grissom when the first premium would be drafted from his bank account. Grissom replied: "[O]nce we've submitted it, it really is dependent upon the bank." Boyd expressed his hesitancy to cancel the Mutual of Omaha policy explaining, "I know that no insurance is in effect until [the] premium has been paid[.]" Boyd further noted: "[I]t's not a binding contract until money is exchanged ... but once they receive a check in their hands and it's credited, then—then it's in force, not before."

On the morning of January 30, 2008, Boyd informed Select-Quote that he had not yet received the policy from Liberty Life. Subsequently, SelectQuote investigated the matter and determined that Grissom, through a clerical error, had quoted Boyd the incorrect premium amount. When calculating Boyd's adjusted premium in the computer system, Grissom inadvertently had selected "Non–Tobacco" from the pull-down menu instead of "Tobacco." As a result, she had calculated the monthly premium based on the underwriting class "*Non–Smoker*/Non–Preferred Table B" in the amount of $417.73, instead of "*Smoker*/Non–Preferred Table B" in the amount of $1,037.90.[3]

That afternoon, Sales Supervisor Chris Smith of Select-Quote called Boyd and informed him of the clerical error. Smith quoted Boyd the correct monthly premium rate of $1,037.90. Boyd responded, "this is absolutely totally unacceptable." He further stated: "I am not going to pay 13 or $1,400 a month with Liberty Mutual." Boyd informed Smith that he would take this issue to his lawyer and instructed Smith, "you are not going to do anything without me talking to my lawyer." On May 16, 2008, Boyd accepted a ten-year, $500,000 term-life insurance policy from Genworth Life and Annuity Insurance Company with a monthly premium of $916.13.

---

3. The quote history can be summarized as follows:

| | Date | Amount/Month | Risk/Classification/Table |
|---|---|---|---|
| 1. | Nov. 14, 2007 | $  406.17 | Smoker/Preferred (excellent health) |
| 2. | Jan. 11, 2008 | $  417.73 | Non–Smoker/Non–Preferred/Table 2 |
| 3. | Jan. 30, 2008 | $1,037.90 | Smoker/Non–Preferred/Table 2 |

Boyd commenced this action on November 26, 2008, alleging breach of contract, bad faith refusal to pay benefits, and negligent misrepresentation. Boyd sought damages and attorney's fees. Liberty Life and SelectQuote filed a counterclaim seeking a declaratory judgment to determine whether a contractual relationship existed between Boyd and Liberty Life. All parties filed cross-motions for summary judgment. The parties agreed that no genuine issue of material fact was in dispute and asked the judge to decide the issue as a matter of law. Both cross-motions for summary judgment were heard on June 3, 2010. On June 17, 2010, the circuit court granted summary judgment in favor of Liberty Life and SelectQuote, finding that no valuable consideration existed between Boyd and Liberty Life because Boyd had not paid the insurance premium. This appeal followed.

## STANDARD OF REVIEW

When reviewing the trial court's decision to grant summary judgment, an appellate court applies the same standard of review applied by the trial court. *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 332 (2003). When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts. *In re Estate of Boynton*, 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct.App.2003); *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000). In such cases, the appellate court owes no particular deference to the trial court's legal conclusions. *Boynton*, 355 S.C. at 301–02, 584 S.E.2d at 155; *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.*, 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999).

## LAW/ANALYSIS

■ The sole issue Boyd raises on appeal is whether the circuit court erred in finding no valuable consideration existed to form a contract for life insurance because he had not paid the insurance premium. Boyd contends the tender of a voided check and written authorization to draft his checking account constituted sufficient consideration to form a contract for life insurance. We disagree.

■■ "Valuable consideration for a contract may consist of some forbearance given or detriment suffered." *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 304, 468 S.E.2d 292, 300 (1996) (citation omitted). A "premium" is defined as *"payment* given in consideration of a contract of insurance." S.C.Code Ann. § 38–1–20(46) (Supp.2011) (emphasis added). "Laypersons who pay their premium at the time an application for insurance is filed are justified in assuming that payment will bring immediate protection." *Poston v. Nat'l Fid. Life Ins. Co.*, 303 S.C. 182, 186, 399 S.E.2d 770, 772 (1990); *see also Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 357, 415 S.E.2d 393, 396 (1992).

■■ "As a general rule, in the absence of an express or implied agreement to the contrary, a check does not constitute payment unless it produces payment in cash, the presumption being that the check is accepted on condition that it be paid." *Burns v. Prudence Life Ins. Co.*, 243 S.C. 515, 520, 134 S.E.2d 769, 771 (1964) (citations omitted); *see also Elliott v. Snyder*, 246 S.C. 186, 190, 143 S.E.2d 374, 375 (1965) (stating when a check is an accepted method of payment, "the giving of a check is not, in the absence of an express or implied agreement to that effect, a payment in discharge of the debt"); *Holladay v. S.C. Power Co.*, 169 S.C. 241, 243, 168 S.E. 691, 691 (1933) ("This court has repeatedly, and recently, held that a check does not constitute payment, unless it produces payment in cash."). "The foregoing principles are equally applicable to the payment of insurance premiums, and ordinarily the taking of a check for an insurance premium is conditional upon payment of the check upon presentation." *Burns*, 243 S.C. at 520, 134 S.E.2d at 771; *see also McCormick v. State Capital Life Ins. Co.*, 253 S.C. 544, 550, 172 S.E.2d 308, 311 (1970) (holding insurance policy was "never of any force or effect and afforded the applicant no coverage" because check given for payment of first monthly premium was never paid). "In the usual instance, acceptance of a check by the insurer is considered to be conditional only, and the burden rests on the insured to see that the check is honored when presented." *Burns*, 243 S.C. at 520–21, 134 S.E.2d at 771.

The effect of this rule is that if the check is paid when presented, the payment generally relates back to the time when the check was delivered to the payee, thereby benefit-

ting the drawer, by preventing the payee (here the insurer) from being able to hold the check without depositing or cashing it for an unreasonable time-beyond the due date for the payment of the premium, for instance-and then asserting that the payment was late and that, therefore, the policy lapsed.

16 Williston on Contracts § 49:76 (4th ed.2010).

Boyd selected to pay the insurance premium on a monthly basis; therefore, he was required to pay by automatic bank draft. Boyd submitted a voided check and authorization to draft his checking account in compliance with the insurance application's instructions. Thereafter, Liberty Life approved Boyd's insurance application. However, the record contains no evidence that Liberty Life's approval of Boyd's insurance application constituted an agreement by Liberty Life to accept the tender of the voided check and authorization to draft his checking account as absolute payment of the premium. *See Burns,* 243 S.C. at 520, 134 S.E.2d at 771 ("[I]n the absence of an express or implied agreement to the contrary, a check does not constitute payment unless it produces payment in cash.").

Moreover, Boyd submitted the voided check and bank draft authorization as a part of the application process two months before the premium amount was finalized. As a result, neither the voided check nor the authorization to draft Boyd's checking account specified the amount of the premium. *See Going v. Mutual Benefit Life Ins. Co.,* 58 S.C. 201, 209, 36 S.E. 556, 558 (1900) (holding an insurance policy requiring payment of the first premium during the lifetime of the insured was effective upon tender of the *amount of the premium* ); *see also Burns,* 243 S.C. at 520, 134 S.E.2d at 771 ("The mere giving or sending of a worthless check to the insurer does not effect the payment of a premium." (citation and quotation marks omitted)). Furthermore, when SelectQuote informed Boyd of the correct adjusted premium quote of $1,037.90, Boyd refused to pay that amount.[4] Accordingly,

---

4. Boyd also argues Grissom's misquote of $417.73 is binding on Liberty Life because SelectQuote acted as an agent for Liberty Life by communicating the amount of the premium. We find this argument is without merit. Communicating a premium amount to the prospective insured does not convert an insurance broker into an insurance agent. *See*

we find Boyd's submission of a blank, voided check and authorization to draft his checking account pursuant to the application instructions merely established a method of payment, i.e., automatic bank draft, but was not the actual payment itself.

Significantly, Liberty Life neither accepted nor drafted any funds from Boyd's checking account as payment of the premium. Even though Boyd authorized Liberty Life to draft the premium amounts from his checking account, he was still obligated to pay the premium to establish sufficient consideration for an insurance contract. *See Burns*, 243 S.C. at 520, 134 S.E.2d at 771. "The fact that the insured authorizes his or her bank to deduct the amount of the premium from his or her account does not satisfy the insured's obligations where no payment was actually made by the bank to the insurer." 5 Holmes' Appleman on Insurance § 24.2 (2d ed.1998); *see also Haupt v. Midland Nat'l Life Ins. Co.*, 567 So.2d 1319, 1321 (Ala.1990) (holding appellant's choice of the automatic withdrawal method of payment did not relieve him of his duty to pay the premium). Because Boyd did not actually pay the premium, we hold there was not sufficient consideration to form a contract for life insurance between Boyd and Liberty Life.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

PIEPER and KONDUROS, JJ., concur.

S.C.Code Ann. § 38–43–10(5) (Supp.2011) (defining an insurance agent as a person who "receives, collects, or transmits any premium of insurance"). Additionally, Liberty Life did not approve Boyd for the "Non–Smoker" rate of $417.73 mistakenly quoted by Grissom. *See Hiott v. Guaranty Nat'l Ins. Co.*, 329 S.C. 522, 530, 496 S.E.2d 417, 422 (Ct.App.1997) (stating an insurance broker cannot be converted into an agent of the insurer "without evidence creating an inference that he was acting at the 'instance or request' of the company" (citing *Allstate Ins. Co. v. Smoak*, 256 S.C. 382, 393, 182 S.E.2d 749, 754 (1971))).